# Birmingham & Atlantic A. R. R. Co. v. L. &. N. R. R. Co.

*Bill to Enjoin Condemnation Proceedings and Enforce a Trust.*

(Decided July 2, 1907.—44 South. 679.)

1. *Trusts; Resulting Trusts.*—Where one furnishes the purchase price for land, the legal title to which is conveyed to another with the agreement to hold the land for the purchaser's use and to convey it to the purchaser, when the purchaser should become ready to use it for a certain purpose, a resulting trust will be declared in said land in favor of the person so furnishing the purchase money.

2. *Eminent Domain; Condemnation Proceedings; Parties Defendant; Cestui Que Trust.*—Under section 1713, Code 1896, as amended by General Acts 1903, page 374, the trustee is the only proper party defendant in the condemnation of the trust estate; the interest of the cestui que trust as to condemnation may, and should be fully protected by the trustee.

3. *Same; Railroads; Condemning Property of Another Railroad.*—There is no power express or implied in one railroad company chartered under the laws of this state to condemn the property of another railroad corporation already devoted to public use where such condemnation materially interferes with such use of the property.

4. *Same; Injunction; Grounds; Jurisdiction.*—The probate court in condemnation proceedings being a court of law with limited powers and no jurisdiction of purely equitable matters, and complainant being unable to assert an equitable right in such condemnation proceedings through the trustee or otherwise. it may maintain a bill to enjoin the petitioner from proceeding with the condemnation suit, where land held in trust, is sought to be condemned.

APPEAL from Talladega City Court.

Heard before Hon. G. K. MILLER.

Bill by the Louisville & Nashville Railroad Company against the Birmingham & Atlantic Air Line Railway Company, and the Louisville Property Company to enjoin condemnation proceedings instituted by the B. & A. A. R. R. Co. against the Louisville Property Company, and to enforce a resulting trust. Motion was made to dismiss the bill for want of equity and to dissolve a temporary injunction issued. From a decree denying the motion, the respondent railroad company appeals. Affirmed.

CECIL BROWNE, for appellant.—A motion to dissolve an injunction can be predicated either upon a want of equity in the bill, or upon sworn answer denying the allegations thereof.—*E. & W. R. R. Co. v. E. T. V. & G. R. R. Co.*, 75 Ala 278. Condemnation proceedings are not in rem but in personam and not binding on the owner unless made a party.—*Hunt v. Acree*, 28 Ala. 593; *Branch Bank v. Hodges*, 12 Ala. 118; *Gritton v. Andrews*, 10 Ala. 166; *Owen v. Bankhead*, 76 Ala. 143; *C. & W. Ry. Co. v. Witherow*, 82 Ala. 192. The right to take under power of eminent domain cannot be frustrated by any contract between private parties or between the condemnor and the owner of the land.—1 Lewis on Eminent Domain, p. 623. The legislature may authorize one railroad to take the property of another by express words or by necessary implication.—*Mobile, etc., R. R. Co. v. Midland R. R. Co.,* 87 Ala. 501; 6 A. & E. Ency. of awL, 533; 21 Am. Rep. 643. The trustee and not the cestui que trust is the proper party against whom to bring condemnation proceedings.—6 A. & E. Ency. of Law, 609, and note.

WHITSON & HARRISON, for appellee.—On motion to dismiss the allegations of the bill are taken as confessed.

whether well or badly pleaded.—*Blackburn v. Fitzgerald,* 130 Ala. 584; *West v. L. & N. R. R. Co.,* 137 Ala. 572. Under the facts in this case the L. & N. R. R. Co. was the equitable owner of the land and had a resulting trust therein. The Louisville Property Company is a mere conduit of title and without beneficial interest in the property.—*Lehman v. Lewis,* 62 Ala. 129; *Tillman v. Morrell,* 120 Ala. 239; *Long v. Meacham,* v42 Ala. 405. One public service corporation cannot appropriate or condemn lands of another public service corporation without alleging and proving that the use for which it is proposed to take such land will not materially interfere with the use to which said property is already subjected.—General Acts 1903, p. 376. It is sufficient to prevent condemnation that it has been acquired for public use and is about to be put to such use.—*M. & G. R. R. Co. v. Ala. Mid. R. R. Co.,* 87 Ala. 501; *A. & C. R. R. Co. v. J. G. & A. R. R. Co.,* 82 Ala. 297; 15 Cyc. 614; 1 Lewis on Eminent Domain, p. 627. The chancery court had jurisdiction to enjoin condemnation proceedings regardless of the solvency or insolvency of the corporation and of the inquiry whether or not the complainant could recover and realize compensatory damages at law.— *City Council of Montgomery v. Lemle,* 121 Ala. 609; *Niehaus v. Cook,* 134 Ala. 228. Injunction was necessary as there is no process of law by which complainant could intervene or make itself a party to the probate procedings.—*Ex parte Printupp,* 87 Ala. 148; *Renfroe v. Goetter, et al.,* 78 Ala. 314. The probate court has no jurisdiction over equitable matters and titles.—*Penny v. Wellborn,* 72 Ala. 58; *Hinson v. Williamson,* 74 Ala. 180; *Creamer v. Holbrook,* 99 Ala. 52.

DENSON, J.—The Louisville & Nashville Railroad Company filed this bill in the city court of Talladega on

the 19th of March, 1907, against the Birmingham & Atlantic Railroad Company and the Louisville Property Company. In the bill it is averred that complainant is a common carrier, engaged in operating a railroad, through the city of Talladega, from Calera to Gadsden, Ala., connecting with its main line at Calera, Ala.; that the Birmingham & Atlantic Railroad Company is engaged in operating a railroad from Pell City to Talladega, the latter place being its terminus; that the complainant's passenger and freight stations at Talladega had become inadequate for the proper accommodation of the public and the efficient discharge of complainant's duties as a common carrier; and that in order to build a new and enlarged passenger and freight station in the city of Talladega, and to provide adequate terminal facilities for its partons and the public, complainant, during the fall of 1906, purchased valuable property adjoining and near to its present depots, paying therefor $25,000. The property purchased is accurately described in the bill, and the names of the persons from whom purchased are set forth. Part of the property is the north end of lot No. 107 in the city of Talladega, described in the bill, and purchased from J. E. Stone for $2,500 in cash, paid by the complainant. It is alleged that all of the property so purchased by the complainant was conveyed to the Louisville Property Company by the parties from whom complainant purchased, but that complainant furnished all of the purchase money therefor and purchased the same for railroad uses and purposes, for the construction of its new depots and station and the necessary tracks to serve the same. It is averred that the said property was conveyed to the Louisville Property Company, upon its agreement to hold said lands for complainant's use and benefit and in trust for the complainant, and to convey the same to complainant

as soon as it should be ready to construct its new freight and passenger depots or station in the city of Talladega and the necessary tracks for use in connection with the same. It is averred that the complainant is preparing to use the property for such purposes. Continuing, the bill avers that on March 9, 1907, the Birmingham & Atlantic Railroad Company filed its petition in the probate court of Talladega county to condemn a portion of said lot 107; copies of the petition for condemnation and plats showing the property sought to be condemned being attached as exhibits to the bill and made a part thereof. The bill avers that before and at the time the petition for condemnation was filed the petitioner had full notice and knowledge of complainant's equitable title in the property sought to be condemned, and that it had been fully advised of complainant's plans as to such proposed new passenger station and terminal facilities at Talladega as the same were shown on plats of land so equitably owned by the complainant before the filing of the petition. The bill further avers that the portion of lot 107 so equitably belonging to complainant that is sought to be condemned by the petitioner in the condemnation proceeding is the key to the use of all the property purchased by the complainant for its new station and terminals, and that without the use thereof complainant could not reach with its line of railroad such property so acquired for such uses, or the portion thereof that is to be so used for such new station; that it is necessary for appellee to use the same for its own tracks; and that it was about to apply it to such public use. The Louisville Property Company and J. E. Stone are made parties defendant to the condemnation proceedings, but complainant is not made a party thereto. The prayer of the bill is for a temporary injunction, restraining the Birmingham & Atlantic Railroad Company

from proceeding with the condemnation suit as to that portion of lot 107 conveyed by J. E. Stone to the Louisville Property Company, for which complainant paid the purchase money, and for the enforcement of a resulting trust against the Louisville Property Company, as to said portion of lot 107, and a divestiture of the legal title out of the Louisville Property Company and the investiture of same in complainant. It is also prayed that, on final hearing, the temporary injunction be made perpetual. The Birmingham & Atlantic Railroad Company moved to dismiss the bill for the want of equity, assigning several grounds for the motion, and also moved to dissolve the injunction on the same grounds as those assigned for the motion to dismiss. The chancellor overruled both motions, and from his decree the Birmingham & Atlantic Railroad Company takes this appeal.

It is important to determine first the nature and extent of complainant's interest in the lands, before proceeding to the discussion of other questions presented for consideration. Complainant alleges that its interest is a resulting trust. Resulting trusts, says Mr. Pomeroy, "arise where the legal estate is disposed of or acquired, not fraudulently or in the violation of any fiduciary duty, but the intent in theory of equity appears or is inferred or assumed from the terms of the disposition, or from accompanying facts and circumstances, and that the beneficial interest is not to go with the legal title. In such case a trust 'results' in favor of the person for whom the equitable interest is thus assumed to have been intended, and whom equity deems to be the real owner."—1 Pomeroy's Eq. Jur. (3d Ed.) § 155; 3 Pomeroy, § 1031. The same distinguished author gives this illustration of a resulting trust: "Where a purchase has been made, and the legal estate is conveyed or transferred to A., but the purchase price is paid by B."—3

Pomeroy, §§ 1031, 1037. The averments of the bill, it seems clear, bring the complainant's interest in the lands directly within the definition and illustration given, and show that the transactions which gave rise to the execution of the conveyance and culminated in its execution should be construed as creating a resulting trust by operation of law. This doctrine is fully indorsed and recognized by numerous decisions of this court.—*Haney v. Legg,* 129 Ala. 619, 30 South. 34, 87 Am. St. Rep. 81; *Sanders v. Steele,* 124 Ala. 415, 26 South. 882, and authorities there cited; *Long v. Mechem,* 142 Ala. 405, 38 South. 262. "The interest of the cestui que trust is not a mere 'equity.' It is an equitable estate in the land, and may be conveyed, transferred, devised, or otherwise dealt with as property."—3 Pomeroy's Eq. Jur. § 1043. But it may be cut off by a sale to a bona fide purchaser without notice.—*Lehman v. Lewis,* 62 Ala. 129.

It is urged by the respondent (appellant) that the trustee is the only necessary party to the condemnation proceedings, and that upon it devolved the duty of making all the defenses against the application, for the protection of the rights of the cestui que trust, that could have been made, and that in the absence of an averment in the bill that the trustee would not protect the interest of the cestui que trust, or that it had refused to do so, the bill is without equity, and no groud is shown for an injunction. Section 1713 of the Civil Code of 1896, as the same is amended by an act passed at the session of 1903 of the Legislature and approved October 1, 1903 (Gen. Acts 1903, p. 347), requires that applications for the condemnation of lands "must describe the several tracts and state the names and residence of the owners of each tract, if known, or, if unknown, must show that reasonable diligence has been used to ascertain the

same." Here, we have seen, the party holding the legal title to the land in question was made a party to the procedings for condemsation, its name was given as the owner, and, it being a nonresident, publication of notice was made as required by the statute, and, notwithstanding the petitioner was duly notified of the status of the title and that the Louisville & Nashville Railroad Company held an equitable estate in the lands—was the beneficial owner of the same—it was not made a party. In *New & Old Decatur Belt & Terminal R. R. Co. v. Carcher*, 112 Ala. 676, 21 South. 825, it is held that, the exercise of the right of eminent domain being a power delegated by the Legislature, statutes conferring such power must be strictly construed; further, that our statutes relating to condemnation, in the use of the word "owner," contemplate and provide for proceedings only against those who have a proprietorship in the property sought to be taken and applied to a public use. So far as we are advised, the statute has never been construed by this court, in respect to the meaning of the word "owner," more definitely than is set forth in the case supra. "The common or general acceptation of the term 'owner' is understood to be one who has the legal title to the thing claimed."—*Louisville* N *Nashville Railroad Co. v. Murphree*, 129 Ala. 432, 29 South. 592.

By an act of the Legislature of New Jersey a railroad company was given power to condemn lands. The charter required that the application for the condemnation should describe the lands, and set forth the names of the occupant or occupants, if any there by, and of the owner or owners, if known. The application was required to be filed with a justice of the Supreme Court, who should cause the applicant to give notice to the persons interested, if known. It was held, in construing the charter, that it plainly distinguished between the owner and per-

sons interested; further, that by "owner" was meant the person having some legal estate which the company proposed by the condemnation to acquire; that under the more comprehensive expression of "persons interested" is included, not only the persons in whom is vested the legal title which the company proposed to acquire, but also other individuals, having some independent right or interest therein not amounting to an actual legal estate. —*State v. Easton* N *Amboy R. R. Co.*, 36 N. J. Law, 181. The construction given the charter in that case was reaffirmed in the later case of *McIntyre v. Easton & Amboy R. R. Co.*, 26 N. J. Eq. 425. See, also, *Platt v. Bright*, 29 N. J. Eq. 128; *Severin v. Cole*, 38 Iowa, 463. In 7 Ency. Pl. & Pr. p. 488, under the title "Eminent Domain," it is said: "By the word 'owner' is meant the person having some legal estate, while under the expression 'persons interested' is included, not only the person in whom is vested the legal title, but also others having some right or interest therein, not amounting to a legal estate." In California it has been held that, "in taking land for a public highway, the person who holds the legal title is the only necessary party and the only one whose damages are to be assessed.—*Hidden v. Davisson*, 51 Cal. 138. In 2 Lewis on Eminent Domain, § 321, it is said that in case of trust estates the trustee is the proper party, and not the cestui que trust. The reason for this, it is stated, is that the trustee represents the entire estate and is entitled to receive the entire compensation.—Authorities in note 33 to the text.

It seems that the Legislature, in using the word "owner," without more, intended to confine the proceedings to the legal title; and there is good reason for this. The proceedings are to be prosecuted in a court of law, without equity jurisdiction to adjust the equities which may exist, and in many instances it would be utterly im-

possible for the applicant to find out or ascertain the nature and extent of asserted equities, as in this case, where, without the alleged actual notice to the applicant, there is nothing in the deed and records to inform the applicant of the existence of the equitable estate of the complainant. But, however this may be, while there may be conflict in the authorities on the question as to who is the necessary party under statutes employing the word "owner," it seems that there is no conflict upon the proposition that in trust estates the trustee is the only proper party. This being true, we come to consider the duties of the trustee, and how far he may protect the interest of the cestui que trust in condemnation proceedings. We think there can be no doubt that the interest of the cestui que trust may be fully protected by the trustee, so far as the question of compensation goes, and, furthermore, that moral duty and legal duty require the trustee to afford such protection. But the equity of the bill does not depend upon the question of compensation and its proper adjustment. Aside from this, the complainant insists and charges that the property sought to be condemned was procured by it for the purpose of a public use, and that it is necessary for complainant's use as a railroad corporation, to enable it to reach its proposed station, as set forth in the bill, and that, unless it can appropriate it to such public use, the other property purchased for its new station and terminus will be useless to it for such purposes, and, further, that it is necessary to use practically all of the property sought to be condemned for tracks to reach its proposed new depot. It is also averred that at the time the condemnation proceedings were commenced complainant was about to apply the property to the uses alleged. The property had been set apart for the use. Taking the averments of the bill as true, it is manifest that condemnation of the

property to the use of the appellant would materially interfere with and obstruct the free and reasonably necessary use by the complainant of the property.

The appellee, it seems, is operating under a charter obtained under the general laws of the state, and therefore possesses no express powers to take and condemn the property of another railroad corporation which is already devoted to a public use, and which, according to the bill, cannot be condemned without material interference with that use; nor does such power arise from necessary implication. Therefore the rule as stated in the case of *Mobile & Girard R. R. Co. v. Midland Ry. Co.*, 87 Ala. 501, 507, 6 South. 404, in reference to determining the respective rights of the parties, is applicable; and we content ourselves with the reference to that case, without going into a further discussion of the rule. If the complainant was possessed of the legal title to the premises, it is very clear that, were it a party to the condemnation proceedings, it could defend against the condemnation of the land by bringing itself within the rule above referred to; and it may be that, if the deed to the Louisville Property Company created an express trust, it could make the same defense in behalf of the cestui que trust. This point, however, we do not decide. But the deed on its face purports to convey the absolute title to that company without any intimation of a trust estate. The estate claimed by the complainant, we have seen, is an equitable one, which courts of law take no cognizance of, and in respect to which they cannot afford adequate relief. It is a proposition of universal application that courts of law never take cognizance of cases in which the primary right, estate, or interest to be maintained, or the violation of which is sought to be redeemed, is purely equitable, unless such power has been expressly conferred by statute."—1 Pomeroy's Eq.

Jur. § 137. No such power is conferred on the probate court in condemnation proceedings. It sits as a court of law, with limited powers and jurisdiction in such matters. Again: "The exclusive jurisdiction of equity includes * * * all civil causes in which the remedy to be granted—and, of course, the remedial right—is purely equitable, or one which is recognized and administered by courts of equity and not by courts of law."—1 Pomeroy's Eq. Jur. § 138.

In this view the Louisville & Nashville Railroad Company, owning only an equity, and that dependent on parol proof for its establishment, and its establishment cognizable only in a court of equity, would be met at the very threshold of the court of law (in its attempt to show its defense against the condemnation) with the proposition that it had no estate or right cognizable in that court, and that it must first establish the estate in a court of equity. This principle is illustrated and enforced in a line of cases decided by this court in which, before the statute allowing a claimant in a suit for the trial of the right of property to recover on an equitable title, and prior to the "married woman's law" of 1887, it was held that, "when property is seized under process against the husband, which the wife claims under sale or gift by or conveyance from him to her, neither she in her own name nor in the name of the husband as trustee can defend on such title in a trial at law of the right of property."—*Bush v. Henry,* 85 Ala. 605, 5 South. 321; *Loeb v. Manasses,* 78 Ala. 555; *Snediker v. Boyleston,* 83 Ala. 408, 4 South. 33.

On these considerations it is manifest, and must be held, that if the Louisville & Nashville Railroad Company had been made a party to the proceding in the first instance, or could have become a party by intervention,

28 R

yet on account of the equitable nature of its title it could not have been heard in the probate court to set up such equitable title, nor its application of the property sought to be condemned to its own uses, for the benefit of the public and for railroad purposes. If the complainant could not set up the equitable title, it would seem that, for the same reasons, the Louisville Property Company could not do so. It would have to resort to the same means for showing the complainant's interest that the complainant would, and, when shown, it would be the same equity that would be shown by the complainant. It was held in the case of *Snediker v. Boyleston,* 83 Ala. 408, 4 South. 33, that the husband as trustee of the wife could not, in an action at law, show in defense the equitable title of the wife. There is no difference in the principle when sought to be applied here. It is clear that our condemnation statute makes no provision for the adjudication of rights of persons who may have merely an equitable estate in the premises.

On the case presented, we are of the opinion that the complainant's bill is not without equity, and that complainant was entitled to the temporary injunction; and this, without here deciding whether or not the land in question is subject to condemnation for the uses claimed by the appellant. That question cannot, of course, be considered and determined until after issue joined on the merits, and evidence taken and heard in the due course of procedure. This does not, as suggested by appellant's counsel, transfer the jurisdiction to condemn lands from the probate to the chancery court. If the city court, on the final hearing, should determine that the appellant is not entitled to have the land condemned as against complainant, of course, the injunction will be made perpetual against the condemnation procedings in respect to the particular land in controversy. On the other

hand, if the complainant fails to make good its claim, the injunction will be dissolved, and the probate court will proceed to the hearing and determination of the case as presented to it.

The points we have discussed are the only ones we deem necessary to be considered. It follows that the decree of the city court will be affirmed.

Affirmed.

TYSON, C. J., and HARALSON and SIMPSON, JJ., concur.