# Carroll *v.* Draughon, *et al.*

## *Bill to Declare a Resulting Trust in Land.*

(Decided June 29, 1911.  56 South. 207.)

1. *Public Lands; Homestead; Resulting Trusts.*—No trust results in favor of a married woman in public land homesteaded by her husband merely because she furnished the money to purchase a prior entrymen's relinquishment.

2. *Same; Patent; Effect.*—A patent to public land presumptively vests the legal title in the parties to whom it was issued.

3. *Same.*—A patent to public lands is prima facie evidence of a compliance with all preliminary requirements to its issuance.

4. *Same; Homestead; Title of Entryman.*—Under the United States statute, title cannot inure to the benefit of or in trust for any one but the entryman.

5. *Trusts; Resulting Trusts; Innocent Purchasers.*—Even if a wife could enforce a resulting trust in lands acquired by her husband with money furnished by her, as against him and his heirs, she cannot as against bona fide purchasers for value.

6. *Same; Establishment; Resulting.*—The occupancy of the land jointly with her children, heirs of decedent, without claiming a resulting trust, though having furnished money for the acquisition of the land, does not charge purchasers from the heirs with notice of the widow's equity.

APPEAL from Geneva Chancery Court.

Heard before Hon. L. D. GARDNER.

Bill by D. S. Carroll against J. W. Draughon and others, to establish a resulting trust in land. Decree for respondent and complainants appeal. Affirmed.

R. H. WALKER, for appellant. The application to have the land set apart to the widow as a homestead

does not estop her or her vendee to seek the redress here sought.—*Faircloth et al. v. Carroll*, 137 Ala. 243. She was left in possession in her own right, and by no act of the husband, and hence her possession was notice of her claim.—*McLeod v. Bishop*, 110 Ala. 645. The several declarations of her husband and herself while in possession were admissible in evidence.—*Goodbar v. Daniel*, 88 Ala. 583; *Dyces' Case*, 88 Ala. 225. It was the homestead, and hence, not subject to alienation.—*McGuire v. Van Pelt*, 55 Ala. 344. The action taken by the wife in the probate court cannot affect her title or claim.—*Tyler v. Jewett*, 82 Ala. 93; *Winston v. Hodges*, 102 Ala. 304; *Marks v. Wilson*, 115 Ala. 563.

W. O. MULKEY, for appellee. There is no specific prayer to declare or establish a resulting trust, nor is there prayer for general relief. Hence, that relief cannot be granted.—*Patterson v. Bragg*, 95 Ala. 58; 58 Ala. 221; 5 Port. 9; Sec. 3094, Code 1907. Under the revised statute, the alleged sale by Kelly was void, and conferred no rights whatever on the purchaser, and could not have the effect of stamping the land with any trust in favor of the person furnishing the money for that purpose.—*Cox v. Donelly*, 34 Ark. 762. Under the facts in this case, if the money was furnished by the wife the presumption is that it was furnished as an advancement, and no presumption of trust arises.—*Hatton v. Landman*, 28 Ala. 135; *Long v. King*, 117 Ala. 423. The idea of a trust is barred by the doctrine of laches and the statute of limitation.—*Bracken v. Newman*, 121 Ala. 311; *Martin v. Kelly*, 132 Ala. 201. No knowledge on the part of the purchaser of the existence of the trust is shown, and it is shown that they paid value for the land.—*Walker v. Elledge*, 65 Ala. 51; 71 Ala. 220. There is no reason why the administrator of Mrs. Carroll

should be restored to the possession of the land involved in this suit, as the administrator is not shown to have been deprived of anything to be restored.—3 Cyc. 462; *Ex parte Weldon,* 148 Ala. 430; *Crocker v. Clemmons,* 29 Ala. 296.

SOMERVILLE, J.—The primary purpose of the bill of complaint is to declare a resulting trust in certain lands. The following essential facts are shown by the record: In 1888 one Kelley was living on the land in question, claiming it under a homestead entry, the status of which does not appear. In that year he sold and turned over his claim, possession, and improvements to one Delaware Peacock, the consideration for which was $185, which was paid out of money belonging originally to Ophelia Peacock, his wife; the intention being to provide a home for himself, his wife, and his children. No written transfer is shown. Delaware Peacock then entered on the land and occupied it until his death in April, 1894. Presumptively he made the final proofs required by law, as testified to by one of the witnesses, for a few days after his death a patent, issued by the government, came to his address. The patent was returned, with the explanation that the patentee was dead, leaving heirs, and on February, 1895, a patent was issued granting the land to "the heirs of Delaware W. Peacock, deceased," and reciting that their claim had been "established and duly consummated in conformity to law." This patent was received and kept by the widow, said Ophelia Peacock, who, with her said Delaware's only two children, Emma and Chaldee, continued to reside on the place. The respondents acquired and now own the interests of the said two children, by deeds executed by them after they became sui juris, and prior to the filing of this bill. The recital in each deed is for a

grant of an undivided half interest in the land, and the purchasers had no knowledge or notice of the fact that Ophelia Peacock's money was used in the purchase of Kelly's claim, nor of any claim to any interest in the land on her part. For Emma's half interest, purchased in May, 1901, $225 was paid; and for Chaldee's, purchased in January, 1907, $1,000 was paid. Ophelia Peacock married the complainant, Carroll, and prior to her death executed a deed conveying to him all her interest in the land, and he now claims the land in his own right. Much other evidence was introduced, and several other issues raised, in the court below, which, in our view of the case, need not be here considered.

The facts and conditions which will support a resulting trust have often been considered and declared by this court, and we shall not restate them.—*B. & A. R. Co. v. L. & N. R. R. Co.*, 152 Ala. 422, 44 South. 679; *Butts v. Cooper,* 152 Ala. 375, 44 South. 616. Had complainant's wife furnished the money with which her former husband actually bought this land from the owner, he taking the title in his own name, it may be conceded that a trust would have resulted in her favor, such an implication not being rebutted by the accompanying circumstances.

But the facts of this case clearly do not come within this principle. At best, the money was furnished to the husband to remove an impedient to his own entry and acquisition of the land as a homestead under the laws of the United States, and he so used it. Neither the land nor any interest in the land was bought or acquired from Kelley, and the entry was made and the proof proceeded in the name of the husband, entirely independent of the arrangement made with Kelley.

Presumptively, the patent vests the legal title in the parties to whom it is issued, and, prima facie, all the pre-

liminary requirements to its granting had been complied with.—*T. C. & R. Co. v Tutwiler*, 108 Ala. 483, 485, 18 South. 668. And if, upon any state of facts, the law authorized the issue of the patent to the heirs of Delaware Peacock, upon collateral attack courts must presume the existence of these facts.

The title to the land entered cannot inure to the benefit of any other person than the entryman, nor can trust relations legally exist between the entryman and any other person in respect to the land entered. This results from section 2290, U. S. Rev. St., 6 F. S. A. 290 (U. S. Comp. St. 1901, p. 1389). *Shorman v. Eakin,* 47 Ark. 351, 1 S. W. 559; *Clark v. Bayley,* 5 Or. 343. And where an agreement was made by a son to secure a title from the government for his father's use and benefit, the father could not sustain a bill in equity to impress a trust on the homestead entry which had been patented to his son.—*Moore v. Moore,* 130 Cal. 110, 62 Pac. 294, 80 Am. St. Rep. 78. The title acquired by the heirs of Delaware Peacock, by patent from the government, is founded upon no privity with the transaction between him and said Kelley; and, whatever this latter transaction may have been, it cannot affect the government grant to said heirs, and fasten upon it a resulting trust as against them. The simple statement of the proposition sufficiently refutes complainant's contention in this regard. The government grant to Emma and Chaldee Peacock vested in them a perfect title to the homestead tract; and it results that Ophelia Peacock, their mother, never had any interest therein, and hence complainant has shown no right thereto, either legal or equitable.

We agree with the chancellor, also, that the respondents have shown that they are bona fide purchasers for value, without any notice whatever of the equitable claim

of Ophelia Peacock; and, whether or not she might have enforced a resulting trust against her husband or his heirs, she cannot do so against these respondents.— *Walker v. Elledge,* 65 Ala. 51; *Dixon v. Brown,* 53 Ala. 428.

Nor would the fact of her joint occupancy of the land with her two children, after her husband's death, without openly asserting her alleged equity against them, be at all suggestive of such a claim on her part, since it was perfectly natural and consistent with the legal title and possessory rights of her children, who were living with her.—*Traun v. Keiffer,* 31 Ala. 136, 145.

We are satisfied the decree of the chancellor is correct on the facts shown, and it is therefore affirmed.

Affirmed.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.