(85 South. 388)

THOMPSON v. UNION. BANK & TRUST CO.
(3 Div. 426.)

(Supreme Court of Alabama. Feb. 12, 1920. On Application for Rehearing; May 27, 1920.)

1. Mortgages ⚹174—Mortgagee, failing to record substitute mortgage, held to have no rights against purchaser.

Where mortgagee, on default by mortgagor, assigned mortgage and quitclaimed the land to her agent to facilitate the collection of the debt, and thereafter took mortgage from agent, after agent's foreclosure and purchase at foreclosure sale, to secure the payment of an indebtedness equal to her claim secured by assigned mortgage, without recording such mortgage from agent, purchaser from agent without notice of mortgagee's mortgage was a bona fide purchaser for value, notwithstanding record showing assigned mortgage unsatisfied; the agent being the holder of the legal title, because of such assignment and quitclaim, and purchase at foreclosure sale under Code 1907, § 4896, and purchaser having no notice of any equity in mortgagee.

On Application for Rehearing.

2. Mortgages ⚹242—Holder of assignment and quitclaim held to acquire legal title.

Where mortgagee, on mortgagor's default, assigns the mortgage and quitclaims the land to assignee, the assignee secures the legal title to the land.

3. Trusts ⚹357(1)—Purchaser from trustee in good faith holds property free from trust.

Purchaser of legal title from a trustee in good faith, for value, and without notice should be protected against the claim of the beneficiary and allowed to hold the property free from the trust.

4. Equity ⚹61—Law prevails where. equities equal.

Where there is equal equity, the law must prevail.

5. Estoppel ⚹72—He who first trusted must first suffer.

Where one of two equally innocent persons must suffer from the fraud of a third, he who first trusted must suffer.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Bill by Annie W. Thompson against H. F. Martin and the Union Bank & Trust Company for an accounting and to fix a lien upon certain lands. From the decree for respondent last named, complainant appeals. Affirmed.

W. A. Gunter, of Montgomery, for appellant.

Martin held as trustee for Mrs. Thompson. 73 Md. 191, 20 Atl. 920, 10 L. R. A. 689; 54 Ala. 309, 25 Am. Rep. 679. A special agent's powers are to be strictly construed. 1 Mechem on Agency, § 742; 104 Ala. 100, 16 South. 29; 69 Ala. 379; 68 Ala. 204; 16 Ala. 28; 12 Ala. 252. The auctioneer was such an agent. 1 Mechem, § 737; 2 Mechem, 2357. The auctioneer had no authority to sell on a credit, and his deed was void. Authorities next above, and 86 Ala. 249, 5 South. 503; 79 Tex. 133, 15 S. W. 224; 83 Ill. 424; 3 Jones on Mortgages, §§ 1613, 1614, 1866, and 1907. The bank was not a bona fide purchaser for value. 37 Kan. 179, 14 Pac. 537, 1 Am. St. Rep. 243; 56 Ala. 269; 11 Ala. 1082; 114 Ala. 355, 21 South. 426; 100 Ala. 352, 13 South. 948, 46 Am. St. Rep. 56; 94 Ala. 512, 10 South. 437; 85 Ala. 84, 4 South.

745; 21 Ala. 125; 56 Ala. 208; 66 Ala. 162; 80 Ala. 402.

Ball & Beckwith, of Montgomery, for appellee.

Martin obtained the legal title, and the bank was a bona fide purchaser. 65 Ala. 285; 108 Ala. 278, 19 South. 354; 110 Ala. 418, 18 South. 13; 174 Ala. 116, 56 South. 530; 61 Pac. 918; 27 Cyc. 1286, 1297; 5 Corpus Juris, 909; 91 Ala. 479, 8 South. 415; 202 Ala. 101, 79 South. 493; 202 Ala. 537, 81 South. 39.

SAYRE, J. Appellant's perfect equity, except as against a bona fide purchaser for value without notice, cannot be denied. The only question, then, is whether appellee, the Union Bank & Trust Company, is such purchaser. The bank deraigned title as follows: Cowart, owning the property at the time, mortgaged it to appellant to secure a loan of money. After Cowart defaulted in the payment of his debt, appellant, acting on the representations of Martin (who had negotiated the loan for her), in order to facilitate his collection of the debt, by the instrument shown in the report of the former appeal (202 Ala. 537, 81 South. 39) assigned the mortgage and quitclaimed the land to him; the instrument to that effect being duly acknowledged and recorded. Shortly thereafter Martin caused a foreclosure of the mortgage under the power therein, and at the sale became the purchaser, taking a deed from the auctioneer, which was duly recorded. At the same time he executed and delivered to appellant a mortgage purporting to secure to her the payment of an indebtedness equal to her claim against Cowart; but, acting on the advice of Martin, appellant withheld this mortgage from record. Then Martin sold the property to Mathews, taking a mortgage to secure the purchase money falling due three years after date. About a year later Martin borrowed money from the bank, and to secure the same executed a paper similar to that shown by the report, supra, assigning his mortgage, and quitclaiming the land to the bank. After Mathews had defaulted the bank foreclosed under the power and became the purchaser. All the paper writings evidencing these transactions were recorded, save only Martin's mortgage to appellant, which, as stated above, appellant withheld.

[1] That appellee paid value and had no knowledge or actual notice of appellant's claim is well established and is not controverted. Accepting Martin's statements, the bank made no investigation of his title. Had it gone to the records, it would have found appellant's unsatisfied mortgage; but it would have found also her assignment and quitclaim to Martin and the subsequent proceedings, all in due form and showing title in Martin. But appellant contends (1) That the auctioneer's deed to Martin should be ignored as ineffectual for any purpose—this for the reason that the auctioneer was by operation of law a special agent, authorized to sell only upon payment of the purchase money, and every person in the world claiming through such deed was required at their peril to take notice of his want of power; and (2) that all purchasers claiming through Martin were put on notice of appellant's equity by the fact that he held under a quitclaim. These contentions may be answered by the same considerations. Appellant's assignee held under a mortgage with full covenants of warranty. The quitclaim, superadded to the assignment, was no doubt inspired by the decision in Sanders v. Cassady, 86 Ala. 246, 5 South. 503; its purpose being to enable the assignee to make a completely effectual foreclosure—at least such would have appeared to be the reasonable explanation of the quitclaim, had appellee gone to the record, and there was no reason for going elsewhere, because Martin, or his vendee mortgagor, was in possession. On the former appeal it was held that this appellee was not put upon notice as to whether appellant had intended to preserve an equity in the subject-matter of the assignment. And this appearance of things accurately reflected appellant's actual purpose, as she freely admits from the witness stand. She assigned her mortgage and armed her agent with her legal title for the very purpose of making an effectual disposition of the property—in other words, to realize the full benefit of her security; and we find no sufficient reason for attributing a different meaning to the record. The transfer of the mortgage and the mortgagee's estate in the land, on the face of it, vested the debt in the transferee, because the transaction could have no other meaning than that in equity the debt belonged to the transferee, as we also held on former appeal, and as appellant now concedes. She took a mortgage to secure her rights against her agent, but, as has appeared, she withheld it from record, and this she did for the very reason that she did not desire to leave under a cloud her agent's apparent power to make an effectual disposition of the property. Hence it is that, though Martin paid nothing for the title which he got, he did get the legal title, and there was nothing to indicate the fact that in foreclosing Cowart's equity he was an agent or trustee for appellant—nothing, therefore, to give notice that Martin's dependable appearance of right and title had been procured by practicing on appellant's trust and confidence.

Our judgment is that a due observance of the rights of an innocent purchaser requires that the present status of the title be not disturbed.

Affirmed.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.

## On Application for Rehearing.

SAYRE, J. [2-5] By way of reply to appellant's argument on rehearing, which lays its stress at a new point, we add the following brief elaboration of what has in effect been said heretofore: Upon analysis the argument against the opinion in this cause simmers down to just this: "The deed by the auctioneer to Martin must be eliminated as a void paper, because the auctioneer was a special agent"—by which, as the context shows, appellant means that he was a special agent for herself—"with no estate, and without power to convey," meaning without power to convey unless and until the amount of the bid was paid to appellant. There is no question that Martin held the legal title to the land in trust for appellant, and if this controversy were between appellant and Martin, appellant's premise, stated above, would need to be conceded, and thereupon appellant's conclusion would follow; but, unfortunately for appellant, that is not the true posture of the case, for while Martin, as between appellant and himself, if we could view the case from that standpoint exclusively, would be held to have acted throughout as trustee for appellant, still it cannot be denied that, under our decisions, he as assignee of the mortgage held the legal title to the land. Welsh v. Phillips, 54 Ala. 309, 25 Am. Rep. 679. And, in virtue of the arrangement into which he had induced appellant to enter, to every appearance he held that title free of any equity in appellant. He needed no other title; but, if he did, he got it by purchase at the foreclosure, where, in legal effect, he, or the auctioneer of his appointment was "empowered and authorized to make and execute a deed to the purchaser in the name of the mortgagors," as was done. Nor did it make any difference that he paid no money to the auctioneer, for he was empowered and authorized to purchase as a stranger, thereby, to the extent of his bid, satisfying the debt which appeared to have been assigned to him. The power to sell was a power coupled with an interest, passing by assignment (Code, § 4896; McGuire v. Van Pelt, 55 Ala. 344, 4 Ann. Cas. 58), and its execution was sufficient to vest the legal title in the purchaser; but it carried no notice of the underlying equity. For the title vested in Martin, whether by the mortgage, or its foreclosure, appellee paid the price, acting on appearances, or what would have appeared, had he gone to the public records. Appellant had been a party, a willing, though deluded, party, to the train of transactions by which the legal title in Martin had been clothed with every appearance of true and exclusive ownership. She had thus lent the credit and currency of her name and signature to the wrong perpetrated by Martin, had enabled him to set up a sign by the way for the misleading of every inquirer as to the title, and appellee, without notice of anything to the contrary, invested its money in the title thus presented to view. The result is that either appellant or appellee must suffer a loss, and we violate no known "code of laws" when we hold that, since appellee purchased the legal title from a trustee in good faith and for value and without notice, it should be protected against the claim of the beneficiary and allowed to hold the property free from the trust. 2 Pom. Eq. Jur. (4th Ed.) § 770. This rule, and its application to the undisputed facts shown by the record, puts into operation and effect two of the paramount principles of equity, viz.: Where there is equal equity the law must prevail; and where one of two equally innocent persons must suffer from the fraud of a third, he who first trusted must first suffer.

Application overruled.

ANDERSON, C. J., and GARDNER and BROWN, JJ., concur.