(105 So. 800)

**WILLARD v. STURKIE.    (7 Div. 550.)**

(Supreme Court of Alabama.   Oct. 22, 1925.)

**1. Trusts ⬤�ancodewy) 17, 18(3)—Parol agreement on execution of deed, to sell property and give plaintiff amount realized over mortgage indebtedness within statute avoiding parol trusts in land.**

Where plaintiff made an absolute deed with power of sale to defendant to extinguish a mortgage, a parol agreement to sell property and give plaintiff amount realized above mortgage carries a beneficial interest in realty and is void under Code 1923, § 6917, as a parol trust in land.

**2. Trusts ⬤⟱ 17, 18(8)—Parol trust not taken out of statute of frauds on receipt of purchase money of lands sold where no money paid grantor; "part performance."**

Where grantee under absolute deed took possession as owner of land, permitting grantor to remain as tenant, a parol agreement to sell land and give grantor money realized above mortgage indebtedness, void under Code 1923, § 6917, was not taken out of the statute of frauds by "part performance" on receipt of purchase money from sales of land, within meaning of section 8034, subd. 5, where none of purchase money was paid to grantor and proof of trust rested entirely on parol evidence.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Part Performance.]

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

Action by W. A. Willard against H. D. Sturkie. Judgment for defendant, and plaintiff appeals. Affirmed.

The complaint was filed January 28, 1924. Count 1 claims $10,000 due by account on January 1, 1922. Count 2 claims a like sum for money had and received. Count 3 is a special count setting up that plaintiff in 1911 became indebted to defendant, secured by mortgage on lands; that, being unable to meet the payments on the mortgage, plaintiff, on June 18, 1913, entered into an agreement with defendant whereby a deed was to be executed conveying the mortgaged lands to defendant, plaintiff to remain upon the lands, look after and keep up the place, and assist, whenever he was able, the defendant in making sales of the property until all the lands had been sold; and in consideration of the services so to be rendered it was agreed that, after defendant had realized from the sales a sufficient sum to repay the loan and interest thereon, the plaintiff should be paid all the proceeds of sales over and above the amount of the mortgage debt; that plaintiff executed the deed, remained upon the lands, and performed his agreement until all the lands had been sold by defendant; that defendant realized from the sales $10,000 over and above the amount necessary to pay the debt and interest, which defendant has refused to pay, though often promising so to do. The count claims this sum with interest since January 1, 1922.

Pleas were in short by consent.

The court directed a verdict for defendant. This ruling presents the issue on appeal.

Plaintiff offered in evidence the mortgage dated July 28, 1911, payable in annual installments beginning December 1, 1911, and running to December 1, 1919, aggregating, with interest, $8,162.75. He also offered the deed, absolute in form, with covenants of warranty, expressing a cash consideration of $6,750, and dated June 18, 1913. He testified in substance: The lands covered by the mortgage and deed consisted of about 600 acres; when the deed was made, the notes secured by the mortgage were turned over to him; there was a small mortgage of $340, which was paid in 1916 after the deed was made. He further testified:

"In the latter part of 1913 Sturkie and myself made a trade for me to move back home to my old place and plow and improve it, reclaim and ditch the land, and put it in a state of cultivation and in shape to sell it, and I remained there from the fall of 1913 until the fall of 1918. The arrangement with Mr. Sturkie was that I was to go there and take care of the property and show it up, and Mr. Sturkie said he would be satisfied if he got his money back and interest and expenses, and he would turn the overplus over to me. After this arrangement was made I went home, cleared the land, ditched and reclaimed the land, put up a barn, and repaired other places, and went right on according to my contract with him—just what I told him I would do. In assisting in the sale of the land often Sturkie would send prospective buyers, and he would authorize me to go with them, and would telephone me they were coming. I knew all the corners of the land, and I did this until he had it about sold."

He then testified as to details of work; that he cultivated part of the land and paid rent on the cotton land, Mr. Sturkie refusing to accept any rents for hay, sorghum, etc.

He further testified:

"I said something to Mr. Sturkie about paying me the overplus after he had sold the property along about 1917 or 1918. * * * He told me as soon as he collected sufficient he would turn

me over my stuff and do as he agreed with me. * * * We had no such paper as gave me the right to redeem in two years. Sturkie did not write out such a paper and turn it over to me. * * * I did not expect to redeem it. I intended to show the land up and get it in good cultivation so Sturkie could sell it. * * * After I made the deed to the farm, Mr. Sturkie paid the taxes."

Other evidence of plaintiff tended to show the agreement was made at or about the date of the deed; that the land was sold by Mr. Sturkie in separate parcels in 1918 for sums aggregating some $14,000, a portion of the purchase money being unpaid at the time of the trial.

Defendant denied any parol agreement as contended by plaintiff; testified that, default having been made on the mortgage, he proceeded in 1913 to foreclose under power of sale; that before sale plaintiff offered to deed the property in satisfaction of the debt; that at defendant's suggestion a written right of redemption was given plaintiff for two years; that plaintiff rented part of the land and paid rents on the cotton crop; that defendant paid plaintiff for his labor and the cost of improvements; that he sold the lands as his own, and never at any time promised to account for any overplus in any way. Other evidence, on cross-examination of plaintiff's witnesses, tended to show plaintiff did not aid in making sales to purchasers, but discouraged same by disparaging talk to prospective purchasers touching the value and quality of the lands.

Hood & Murphree, of Gadsden, for appellant.

The contract averred by the plaintiff does not contravene the statute of frauds. Woodward v. Smith, 7 Ala. 112; Adams v. Adams, 26 Ala. 272; Patterson v. Holmes, 202 Ala. 115, 79 So. 581; Zwicker v. Gardner, 213 Mass. 95, 99 N. E. 949, 42 L. R. A. (N. S.) 1160. The statute of frauds is not available, where the contract has been fully executed. Lagerfelt v. McKie, 100 Ala. 430, 14 So. 281; Kling v. Tunstall, 124 Ala. 268, 27 So. 420; Dargin v. Hewlitt, 115 Ala. 510, 22 So. 128; 26 R. C. L. 1198.

Dortch, Allen & Dortch, of Gadsden, for appellee.

The agreement alleged is void as an attempt to create a parol trust concerning lands. Code 1923, § 6917; Chesser v. Motes, 180 Ala. 563, 61 So. 267; O'Briant v. O'Briant, 160 Ala. 457, 49 So. 317; Jacoby v. Funkhouser, 147 Ala. 254, 40 So. 291; Oden v. Lockwood, 136 Ala. 514, 33 So. 895; Brock v. Brock, 90 Ala. 86, 8 So. 11, 9 L. R. A. 287; Patton v. Beecher, 62 Ala. 579. Conversion of the lands into money does not render the trust enforceable. Moore v. Campbell, 102 Ala. 445, 14 So. 780; Manning v. Pippen, 95

Ala. 537, 11 So. 56; Marvel v. Marvel, 70 Neb. 498, 97 N. W. 640, 113 Am. St. Rep. 792.

BOULDIN, J. [1] "*Trust in Lands; How Created; Exceptions.*—No trust concerning lands, except such as results by implication or construction of law, or which may be transferred or extinguished by operation of law, can be created, unless by instrument in writing, signed by the party creating or declaring the same, or his agent or attorney. lawfully authorized thereto in writing." Code, § 6917.

Does the evidence, without conflict, disclose an effort to establish a parol trust in lands within the meaning of this statute?

Appellant insists the transaction was merely a contract for personal services; the measure of compensation being a sum equal to the amount realized upon a sale of the property in excess of the mortgage, interest, and expenses. We cannot so construe the evidence on behalf of plaintiff. Throughout the testimony runs a common import that the making of an absolute deed, extinguishing the mortgage debt and vesting in the grantee a fee-simple title with absolute power of disposition, was coupled with a parol agreement that the parties would lend their mutual efforts to sell the property, and any "overplus" should be the property of plaintiff and paid over to him. Such an agreement carries a beneficial interest in the real estate. If reduced to writing, either by incorporation in the deed or by separate instrument executed according to the statute, it cannot well be questioned that it would impose active duties upon the grantee as trustee of an express trust. We think the case within the above statute avoiding parol trusts in lands. Chesser v. Motes, 180 Ala. 563, 61 So. 267; Patton v. Beecher, 62 Ala. 579; Brock v. Brock, 90 Ala. 86, 8 So. 11, 9 L. R. A. 287; Brindley v. Brindley, 197 Ala. 221, 72 So. 497; Manning v. Pippin, 86 Ala. 357, 5 So. 572, 11 Am. St. Rep. 46; Moseley v. Moseley, 86 Ala. 289, 5 So. 732; White v. Farley, 81 Ala. 563, 8 So. 215; Moore v. Campbell, 102 Ala. 445, 14 So. 780; Sanders v. Steele, 124 Ala. 415, 26 So. 882; Coleman v. Coleman, 173 Ala. 282, 55 So. 827; Junkins v. Lovelace, 72 Ala. 303; Tolleson v. Blackstock, 95 Ala. 510, 11 So. 284; Tillman v. Kifer, 166 Ala. 403, 52 So. 309; Brackin v. Newman, 121 Ala. 311, 26 So. 3; O'Briant v. O'Briant, 160 Ala. 457, 49 So. 317; Bailey v. Irwin, 72 Ala. 505; Jacoby v. Funkhouser, 147 Ala. 254, 40 So. 291.

[2] The further point is made that upon a sale of the lands by defendant, and receipt of the purchase money, the contract was executed, and no longer subject to the statute of frauds.

It is true the statute of frauds avoids executory and not executed contracts. As ap-

plied to ordinary sales of land, the statute expressly provides that part performance, that is, payment of a portion of the purchase money and putting the purchaser in possession by the seller, withdraws the transaction from the statute. Code, § 8034, subd. 5.

The statute against parol trusts, as applied to the case before us, aims at security of titles by avoiding parol agreements engrafting a trust upon an absolute conveyance, the grantee taking a less estate than declared in the deed. The transaction does not contemplate the passing of possession, the indicia of ownership, to the beneficiary in the alleged trust. Chesser v. Motes, 180 Ala. 563, 61 So. 267, was, as here, an action of assumpsit. The husband had conveyed lands by warranty deed to his wife, under a parol agreement that, after his death, she should sell the lands and divide the proceeds among the children of his first wife. The widow sold the lands, and received the purchase money, and the suit was to recover this fund. This court declared the transaction void as a parol trust in lands. The point was made that the money had become personalty by the sale of the lands, or, to state it differently, by an execution of the trust. The court pointed out that the deed made no provision for a sale, and the right to the proceeds could be maintained only upon proof of an agreement creating a parol trust in violation of the statute. This case seems to us conclusive of the case before us.

In the leading case of Patton v. Beecher, 62 Ala. 579, the history of our statute was given, and its scope and effect carefully defined. It was declared that at common law a parol trust could be established in equity upon lands passing by absolute conveyance; that parol testimony was not refused as tending to vary the terms of the deed, because it did not defeat the absolute title at law. After quoting sections 7 and 8 of the English statute of frauds, and section 1320, Code of 1852, now section 6917, above quoted, it was said:

"Between this and the English statute, there are differences of phraseology, not affecting any question now presented, and whether these differences will require a difference of construction, it is not now necessary to discuss. The statutes have a common purpose—the requisition of written evidence of trusts concerning lands, and the prohibition of the enforcement of such trusts resting merely in parol; unless they fall within the exception of trusts resulting by implication or construction of law, or which may be transferred or extinguished by operation of law."

Proceeding to discuss the exceptions in the statute, "trusts resulting by implication or construction of law," it was pointed out that these exceptions arise, not from contract, but from the acts of the parties upon which a court of equity raises a resulting trust or trust de son tort for the prevention of fraud; that upon the same ground it is permitted in a court of equity to show an absolute conveyance to be a mortgage. It is then declared that the mere violation of a parol agreement to hold in trust is not such fraud as will raise a constructive trust; no fraud or mistake appearing in the original transaction. This case (Patton v. Beecher), followed by Brock v. Brock, 90 Ala. 86, 8 So. 11, 9 L. R. A. 287, has established a clear and sound construction of our statute against parol trusts. They well state and approve the views of eminent authorities elsewhere deprecating a tendency to create exceptions to the statute tending to defeat its salutary purpose. We think Chesser v. Motes, supra, in harmony with this construction.

It may be there are cases in which the equitable action for money had and received may be maintained for money held by a trustee of a fully executed trust, leaving nothing to be done but to pay over money, which in equity and good conscience belongs to another. We do not seek to define them here. Such action should not be substituted for an accounting in equity. When the right to the money depends upon proof of a parol trust, void under the statute, to allow a recovery is to strike down the statute.

The case before us illustrates the effect of such holding. The grantee had an absolute deed; took possession as absolute owner; plaintiff was a tenant thereon; in this status the lands were sold several years after the deed was made; no act in dealing with the property, controlling it or selling it, indicated, to outside observation, any recognition of a trust. The existence thereof rests wholly upon parol evidence of plaintiff and his wife that such was the original agreement, and that later promises were made to carry it out; but never, at any time, was anything paid in recognition of the obligation. We think the right of recovery rests solely upon proof of a parol trust.

The right to recover the consideration paid, if any, in the form of work and labor done or expenses incurred by plaintiff, in compliance with a contract avoided by the statute of frauds, is not presented in argument.

The giving of the affirmative charge was not erroneous upon any of the grounds presented upon this appeal.

Affirmed.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.