2 So.2d 908

**HALL v. HALL et al.**

3 Div. 339.

Supreme Court of Alabama.

June 13, 1941.

Mead & Moebes, of Birmingham, and D. M. Powell, of Greenville, for appellant.

Joe R. Bell, of Hayneville, Rushton, Johnston & Williams, of Montgomery, and Pettus & Fuller, of Selma, for appellees.

FOSTER, Justice.

Appellant, complainant in the cause, instituted this suit in equity to declare and enforce certain rights claimed as a result of transactions with his deceased brother and his wife whereby on September 23, 1934, appellant, whom we will designate as William (Hall), and his wife executed a deed to Mittie Hall, wife of his brother Arthur Hall, whom we will designate as Arthur, for a recited consideration of $16,000. It comes here on appeal from a decree sustaining the demurrer of several respondents to the bill, and therefore the allegations of the bill are taken as true for the purpose of this appeal.

William had previously executed a mortgage to Mittie Hall individually and as trustee (for her sister Mary Webster) for an indebtedness which is alleged to have become the amount of $16,000, at the time when said deed was executed. The land included in both transactions is the same and consisted of a valuable plantation of approximately 2560 acres known as the "Swamp Place."

The bill alleges that after the mortgage became due, William made an unsuccessful effort to borrow the money to pay it. That then Arthur, with whom William was in the closest confidential relations, came to him and induced him to execute the deed mentioned upon the representation made in the presence of Mittie that there was a prospect to sell this land to the United States for $30,000. That it would not purchase the land encumbered by a lien, and if he would execute a deed to Mittie the title would be cleared and the sale expeditiously made. That, in that event, the amount due on the mortgage would be deducted and the balance of the purchase price to the United States would be paid to William. That no sale would be made for less than $30,000. That relying upon the representations and promises made by Arthur, and being in dire and needy circumstances and unable to discharge the said indebtedness he executed the deed: that there was no other consideration. That said land was reasonably worth $30,-000. That Arthur and Mittie then made a sale of said property to the United States for $25,041.57, by deed dated May 3, 1937. That said sum was paid to Mittie by the United States.

The bill then alleges that she paid said sum to respondent Beers in payment of a mortgage which Arthur owed him secured by a mortgage on the separate land of Arthur, which was also a large and valuable tract known as "The Valley." That the deed William made to Mittie, supra, was void by virtue of the unconscionable advantage and fraud, as stated, and that the amount paid by the United States to Mittie was impressed with a trust in his favor. That Arthur and Mittie acted in concert to obtain the benefit of said entire sum. Arthur died December 18, 1939. The bill was filed September 10, 1940.

The bill prays for a decree declaring the invalidity of the deed from William to Mittie, supra, and that a trust be declared on the fund paid to Mittie, and that Mittie, personally and as administratrix of the estate of Arthur, be required to account to and pay William the sum thus due. That William be declared to have the right of subrogation to the mortgage of Beers, to the extent of the payment to him of the trust fund, upon William paying him the balance due on his mortgage. Or, in the alternative, that William be declared to have a lien on "The Valley," supra, subordinate to the Beers' mortgage, to secure the payment of his trust fund so improperly used. Or that, in another alternative, Beers be held accountable to William for the trust fund which he thus received. No allegation is made of notice to Beers that it was a trust fund. There are other features of the bill to which we will refer later.

The demurrers to which we will first give separate attention are those of Mittie, individually and as administratrix, and of Beers.

For present purposes, we will treat the mortgage to Mittie as binding for its full amount, and not now consider the feature of the bill which makes a limited attack on it. The bill does not allege whether the agreement was in writing between Arthur and Mittie on the one hand and William on the other by which the deed was procured.

Argument is made on behalf of Mittie individually and as administratrix of Arthur that such an agreement amounts to the declaration of a trust in land, not in funds, and is void unless in writing, under the authority of Willard v. Sturkie, 213 Ala. 609, 105 So. 800.

While argument is made on behalf of William that the trust is not sought to be created in land by the agreement but in the proceeds of the sale of the land, or that the deed will be treated as a mortgage, citing Robinson v. Gassoway, Ala.Sup., 39 So. 1023 (not reported in [State] reports). We cite on this subject also 27 Corpus Juris 226.

But whether the one or the other contention is correct is not conclusive of the sufficiency of the bill in this respect.

We must remember that we are dealing with a situation where a mortgagor has released his equity of redemption after the mortgage was due. It is similar in material respects to the case of Johnson v. Maness, Ala.Sup., 1 So.2d 655.[1] We there

---

[1] Ante, p. 157.

in substance held that such a deed is invalid, if the consideration was inadequate, or if the mortgagee was not fair and frank in all respects in procuring such release, or if a part of the consideration was a promise which was void under the statute of frauds, and the statute was set up against its enforcement, and the grantor could vacate the deed in equity on either of those theories.

The facts which we have recited in the instant case are sufficient as between the parties to the deed to invalidate it as a conveyance of the equity of redemption, and are squarely within the principles declared in the case cited above. Having such right and not being able to enforce it on the land sold to the United States for value, William has the privilege at his election to transfer his inchoate beneficial interest in the land to the proceeds of the sale of it which Mittie and Arthur received from the United States. The fact that thereby a moneyed judgment may be all that is now available does not militate against the power of equity to declare and enforce a trust when a moneyed judgment is the relief which is sought and ultimately granted. Kelley v. Woodley, 228 Ala. 401, 153 So. 745; Webb v. Darrow, 227 Ala. 441, 150 So. 357; Patton v. Darden,. 227 Ala. 129, 148 So. 806.

. In so far as this aspect of the bill is concerned, it results that the demurrers of Mittie Hall, individually and as administratrix, are not well taken.

But the status of Beers in this respect must be treated on further considerations. Adverting to the failure of the bill to allege notice to Beers that the fund he was receiving was a trust fund, is he chargeable with the amount of his beneficial interest at the suit of William?

The principle is not controlled by the right of one to trace his property which has been stolen or in which for some other reason the person who disposed of it did not have such legal title as to be able to pass that title to another. When the true owner's title has never passed, and he is not estopped by some principle of law, it has been held that he may follow his property into the hands of an innocent purchaser and recover. That is the principle on which the authorities relied on by appellant stand. Allen v. Mendelsohn & Son, 207 Ala. 527, 93 So. 416, 31 A.L.R. 1063; Porter v. Roseman, 165 Ind. 255, 74 N.E. 1105, 112 Am.St.Rep. 222, 224, 225, 6 Ann.

Cas. 718; compare 21 R.C.L. page 44, section 41. And trover will lie for the conversion of money. Hunnicutt v. Higginbotham, 138 Ala. 472, 35 So. 469, 100 Am. St.Rep. 45.

But here Mittie and Arthur did not pay Beers money to which William had the legal title, but only that in which he had a lien or trust, with the title and rightful possession in Mittie, burdened with her obligation as to its disposition. As a general rule one cannot be held liable for the value of trust property acquired from the trustee for value and without notice of the trust. Hanover Nat. Bank v. Thomas, 217 Ala. 494, 117 So. 42; Atkins v. Stacy-Holan Home Bldg. Co., 217 Ala. 167, 115 So. 153; Thompson v. Union Bank & Trust Co., 204 Ala. 293, 85 So. 388; Carroll v. Draughon, 173 Ala. 327, 56 So. 207.

The receipt of commercial paper in payment or as security for a preexisting debt is deemed a valuable consideration. Section 9053, Code of 1923, Code 1940, Tit. 39, § 29; · Reliance Equipment Co. v. Sherman, 216 Ala. 214, 112 So. 822; Walden v. Warren, 215 Ala. 94, 109 So. 749; Fortson v. Bishop, 204 Ala. 524, 86 So. 399; Patrick v. Kilgore, 238 Ala. 604, 193 So. 112.

Likewise, "money has no earmark". "The possession of money vests the title in the holder as to third persons dealing with him and receiving it in due course of business and in good faith upon a valid consideration." The receipt of "money in good faith for such a payment [of an antecedent debt] precludes its recovery by one from whom it was wrongfully taken or diverted." Batson v. Alexander City Bank, 179 Ala. 490, 60 So. 313, 315; 14 Ala.Dig. 590, Money Received, ☞9; 41 Corpus Juris 45, 46, section 32; 114 A. L.R. 383 II; Railway Express Agency v. Luverne Bank & Trust Co., Ala.Sup., 2 So.2d 790; Alabama Nat. Bank v. Rivers, 116 Ala. 1(9), 22 So. 580, 67 Am.St.Rep. 95.

The bill alleges that the money claimed from Beers on account of the payment to him by Arthur and Mittie of money in which he claimed a trust was paid on a debt due· him by them. When value is thus shown as to one receiving such fund, the burden is on complainant to allege and prove notice to him of the trust relation. Patton v. Darden, 227 Ala. 129(11), 148 So. 806. The bill in this respect was subject to demurrer interposed by Beers.

As we have noted, the bill also seeks in one aspect to be subrogated to the Beers' mortgage upon paying the balance due on it, with the right to enforce it for an amount which would include the sum paid him on which William claims a trust. Since there is no principle of conventional subrogation here involved, the only other claim is that of legal subrogation. Aetna Ins. Co. v. Hann, 196 Ala. 234, 72 So. 48; Section 9544, Code, and section 8937, Code of 1923, Code 1940, Tit. 9, § 78 and Tit. 33, § 3.

Except as provided in section 8937, supra, legal subrogation is in general the right of a surety (though such relation is by construction) to pay the debt on which he is bound, and thereby become the equitable assignee from the creditor of the debt, and all the remedies for its enforcement against the principal which the creditor had before it was thus paid. 25 R.C.L. 1322, section 10.

The complainant seeking that right need not be in the attitude of ·a conventional surety, but if he is so by virtue of some equitable principle that feature of the requirement is met. That is illustrated in Bradley v. Bentley, 231 Ala. 28, 163 So. 351, where it was held that when a debt is paid with funds which in equity and good conscience belong in part to another, so that a suit for money had and received was available, it was in substance the use of the property of such other to pay a debt for which he was liable, under circumstances where the entire fund was subject to a lien for the debt. In that case the lien extended to all the property used in paying the debt.

Here Arthur and Mittie merely used a fund on which complainant had a lien or trust, when such fund was not otherwise subject to the debt. So that we have here a situation where one person used the trust fund to pay his debt without the consent of the beneficiary when such fund was not liable to such payment. This situation merely involves the right to trace trust funds, and it does not fall into the category of subrogation as extended in Bradley v. Bentley, supra, pursuant to the statute above cited. No other principle of subrogation can be extended to this situation. See the discussion of the subject in Shaddix v. National Surety Co., 221 Ala. 268, 128 So. 220; Whitson v. Metropolitan Life Ins. Co., 225 Ala. 262, 142 So. 564.

But an absence of the applicability of the doctrine of subrogation does not spell an absence of all equitable remedy. The bill in one aspect asserts the existence of a lien in his favor on the farm of Arthur known as. "The Valley," resulting from the payment in part of a mortgage debt on that farm by the use of the fund held by Mittie in trust for William.

It is of course a familiar principle, now well established, that the statute of frauds is not in the way of tracing trust funds into the purchase of land taking the title in the trustee with no recognition of the trust. Small v. Hockinsmith, 158 Ala. 234, 48 So. 541; Smith v. Perry, 56 Ala. 266. This principle covers any sort of property into which the trust fund was invested. Culver v. Guyer, 129 Ala. 602, 29 So. 779.

When a mortgagor uses a fund subject to a trust in redeeming land under a mortgage, he is exercising a right, albeit the duty, in equity to buy the title conveyed by the mortgage back from the mortgagee. While the equity of redemption is a right to buy back the land, it has greater significance. "Redemption" carries with it more than a mere repurchase. But it includes the idea of a repurchase. The mortgagee has the legal title, and by redemption it is reacquired. In a very real sense therefore the mortgagor is investing a fund in property when he is redeeming that property. If he pays no money at all, his property will be effectually gone by virtue of the title of the mortgagee. When he pays, the result is more than to pay a debt, for he is rebuying the title to his property. In all essential respects, he is investing this fund in land, though he already possessed an equitable interest in it. That equitable interest was the privilege of rebuying the land, coupled with a legal duty to do so, in and by the payment of a debt which when performed had the effect of revesting the title. Section 9026, Code of 1923, Title 47, § 181, Code of 1940.

This situation does not give William the right to claim ownership of the land for his beneficial interest did not pay the entire price of it. And to give him an equitable lien on that land as security for what is due him for thus misusing the fund under the trust is not inconsistent with his right to hold Mittie personally liable for such misappropriation of the fund.

■ The bill alleges that on June 15, 1937, after the sale of the "Swamp Place" to the United States on May 3, 1937, Arthur executed a voluntary conveyance to Mittie of an one-half interest in "The Valley," not recorded until after the death of Arthur. And that on August 20, 1938, he executed to Mary Webster a mortgage on "The Valley" to secure a debt of $8,000, alleged to be without consideration in fact. The bill also alleges on information and belief that neither the deed to Mittie nor the mortgage to Mary was delivered by Arthur during his lifetime, and that they are null and void. The mortgage executed by William in 1932 was made to Mittie Hall and to her as trustee. The beneficiary there mentioned was her sister Mary Webster.

These transactions do not prevent the enforcement of a lien on "The Valley" subject to the Beers' mortgage. And since Mittie was trustee for Mary in the mortgage executed by William, which is alleged to be for $16,000, by the time of the sale to the United States, if the whole sum was paid by that sale, and if the misuse of it in paying Beers resulted in giving an equity to William, that equity would not be subordinate to the mortgage to Mary, assuming that Mary owned half of the $16,000 mortgage, and that Mittie collected it all and used it. This was all done by her as trustee. Moreover, the bill alleges that there was no mortgage debt to Mary.

■ William, in another contention, claims an equitable right by which the court should treat the amount of the fund as $30,000 on which his trust operates, and on the basis of which the amount should be computed, by virtue of an alleged agreement at the time of making the deed that the land should not be sold for less than that figure.

This alleged claim would have the same net result, whether the right be as a set-off against the mortgage debt for breach of the agreement or as an enlargement of the fund representing the purchase price, since the mortgage debt must be deducted from it. We do not think that the fund may be thus enlarged, since the equity of complainant is to trace a trust claim into the proceeds of sale actually received; or else the creation by stipulation of a trust or beneficial right in such fund. In either event, the actual fund is involved, not what it should have been. William cannot set off his damages for the breach of this feature of the contract against the amount of his mortgage debt to Mittie unless her contract in that respect is valid. The argument is made that the contract is within the statute of frauds. The bill does not allege whether the statute was complied with, and it is not subject to demurrer for that failure, though it be within the statute. But since counsel have argued the statute, we assume they wish an expression of our opinion for the further progress of the case.

■ We think it is within the statute. The substance and legal effect of the agreement is that the purchaser of land will not sell it for less than a named figure and pay to the seller all the proceeds except the amount of a debt which the seller owes the purchaser. Upon the execution of the deed with a valid stipulation to that effect, and before the land is resold, the seller has an equitable interest in it to enforce the stipulation. Compare Davis v. Hendrix, 192 Ala. 215, 68 So. 863. If the purchaser should refuse to resell as agreed, and should retain the land as absolute owner, equity would not submit to such injustice if the agreement is valid, but would declare a trust in the land and adjust their rights on equitable principles. If this develops after the sale, the trust would be transferred to the proceeds so received. Patton v. Darden, supra. So that the agreement would be the creation of an interest in land, and be under the statute of frauds. Section 8034(5), Code of 1923, Title 20, § 3(5), Code of 1940; Johnson v. Maness, 232 Ala. 411(9), 168 So. 452; Willard v. Sturkie, supra.

■ There is here in this respect no situation shown in which a deed may be declared a mortgage. And the purchaser has thereby done more than to create a trust in personalty, which is not under the statute, supra. 19 Ala.Dig. 15, Trusts, ☞ 17, 18(2). The trust came into being, if at all, before the personalty did. It was merely transferred from the land to the personalty, if it existed. Davis v. Hendrix, supra. The amount received from the United States must be treated as the measure of William's rights in the absence of a contract complying with the statute of frauds.

■ William also contends that the amount of his mortgage debt should be reduced by about half of that named in it. The bill alleges in this respect the follow-

406

ing facts in substance: The mortgage was originally due T. G. Traylor, the father of Mittie Hall and her sister Mary T. Webster, who inherited the debt. It was originally jointly owed by William and Arthur. There was a debt owing by Arthur to Jenkins Brick Company of about the same amount as the Traylor debt, but this was the individual debt of Arthur, but that William had executed with Arthur notes for this debt, but only for his accommodation, and as surety for him. The bill then sets up fraud in paragraph six. It is alleged that the mortgage of September 26, 1932, here in question, was thus obtained. The deed conveying his equity of redemption under that mortgage was executed September 23, 1934: The mortgage debt being due October 1, 1933. The deed recited a consideration of $16,000.00. The sale to the United States was by deed of May 3,. 1937. Arthur died, as we have said, December 18, 1939.

We think the facts recited in paragraph six of the bill, which are referred to above, show such fraud as to sustain the claim that the mortgage debt of William, herein referred to, should be reduced by about one-half. Any claim of limitations or laches is rebutted by the foregoing recital of facts without the necessity of detailed discussion. Johnson v. Delony, Ala.Sup., 1 So.2d 11.

The demurrers of each respondent are to the bill as a whole and to each and every paragraph, and to that aspect which seeks relief against such respondent separately. Insofar as there are several aspects against a respondent, it must be treated on such demurrer as one which seeks relief against him in its aspect most favorable to complainant. Oden v. King, 216 Ala. 504, 113 So. 609, 54 A.L.R. 1413; Schwab v. Carter, 226 Ala. 173, 145 So. 450; Hunter v. Watters, 226 Ala. 175, 145 So. 472.

There is some aspect of the bill which we think shows a right to relief against each of the respondents. With reference to Beers, the bill seeks to enforce a lien on "The Valley," and offers to redeem from his superior rights remaining unpaid. Hester v. First National Bank, 237 Ala. 307(13), 186 So. 717.

The foregoing discussion shows the theory on which we think the bill has equity as to each of the other respondents. Therefore the demurrers of each and all the respondents separately should have

been overruled. A decree to that effect is here rendered.

Reversed, rendered and remanded.

GARDNER, C. J., and BOULDIN and LIVINGSTON, JJ., concur.