[Bright v. Mack, et al.]


# Bright *v.* Mack, *et al.*

### Bill to Foreclose Mortgage.

(Decided June 1, 1916.   Rehearing denied June 30, 1916.
72 South. 433.)

1. **Principal and Surety; Material Alteration.**—The material intentional change in the terms of the original contract made by the parties without the consent of the surety will discharge the surety.

2. **Subrogation; Principal and Surety.**—The surety upon payment of a debt has the clear right to be substituted in the creditor's place as to all securities held by him for the debt.

3. **Mortgages; Transfer of Property; Liability of Purchaser.**—One who with notice purchases from a purchase money mortgagor part of the mortgaged property in payment of his pre-existing debt, is liable for the value of the property to the mortgagee; such transaction not being authorized by a right given by the mortgage to the mortgagor to swap or exchange the mortgaged property.

4. **Same; Special Provision; Validity.**—A provision in a mortgage permitting a mortgagor to swap or exchange property mortgaged for other property, the property taken in exchange to stand in place of the property originally mortgaged, is valid between the parties.

5. **Same.**—A provision permitting a mortgagor to swap or exchange the mortgaged property for other property which shall stand as security in place of the property exchanged does not render the mortgage void as to purchasers of the property who are not bona fide purchasers.

6. **Principal and Surety; Discharge of Surety; Accelerating Payment.**—Sureties on notes due successively, are discharged by agreements made without their consent between the payee and the principal, the payee knowing of their suretyship, that the non payment of one of the notes at maturity shall mature all of them.

7. **Same; Relationship.**—A surety is a person who is liable to pay a debt or perform an obligation, and who is entitled, if the debt or obligation is enforced against him, to be indemnified by some other person who ought himself to have made payment, or performed the obligation before the surety was compelled to do so.

8. **Same; Form of Relation.**—The relation of principal and surety is fixed by arrangement and equities between the debtor or obligors, and may be known or unknown to the creditor, it being immaterial in what form the relation is established.

9. **Same; Rights of Creditor.**—A creditor's right is not thereby affected if the relation of principal and surety between the debtor and another is unknown to him.

10. **Same; Extent of Obligation.**—A surety, although equally bound with the principal, incurs only such liability as is expressed or necessarily included in the words of the contract.

11. **Same; Contract.**—The contract of suretyship must be strictly construed according to the letter of the undertaking.

[Bright v. Mack, et al.]

APPEAL from Cullman Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by J. M. Bright against John Mack and others, to foreclose a mortgage, and for a decree against sureties. From a decree for respondent complainant appeals. Affirmed in part and in part reversed and rendered.

F. E. ST. JOHN, and SAMPLE & KILPATRICK, for appellant.
A. A. GRIFFITH and CALLAHAN & HARRIS, for appellee.

MAYFIELD, J.—The bill is primarily to foreclose a mortgage, and incidentally seeks a decree against the sureties, who signed several notes secured by the mortgage, for the balance due after the mortgaged property was sold, and also seeks a decree against parties who had acquired or converted certain property covered by the mortgage.

(1, 2) The case made by the bill, and the findings of the chancellor in respect thereto, is well stated by the chancellor as follows:

"The main purpose of the bill is the foreclosure of a mortgage against the defendants, John Mack and Charles Mack, and, in case the proceeds of the sale of the mortgaged property are insufficient to pay the mortgage debt, that a judgment for the deficiency be rendered against the mortgagors as well as against the two sureties, Wm. Schuman and Al. Richter, on the notes, which notes the said mortgage is given to secure. There is a series of the notes, aggregating in amount $10,000, and each note due on a certain date in the future, the due date of each note being different from the others. The mortgage contained a clause providing 'if said grantors shall fail at maturity of any of said notes to pay the same in full, then all of said notes shall at once become due and payable.' The sureties claim, and the proof clearly shows, that this provision was entered into between the principals without their knowledge or consent; and in consequence thereof they are discharged.

"The law is well settled that any intentional material change in the terms of the contract by the original parties, without the consent of the surety, will discharge the surety.—*Hadan v. Brown*, 18 Ala. 643; *Anderson v. Bellenger*, 87 Ala. 334, 6 South. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46. It has been held that the holder of promissory notes extending time of payment to maker

by contract, upon sufficient consideration, discharges an apparent maker that he knows to be a surety, and whose consent to the extension has not been given. This principle has been in effect held so often as to need no citation of authority.

"Will a binding contract as here presented, accelerating the time of payment of the notes, discharge the surety? Upon principle it seems it would. The only case exactly in point which the court has read is the case, cited by the solicitors for defendants, of *Peru Plow & Wheel Co. v. Ward,* 1 Kan. App. 6, 41 Pac. 64.

"Furthermore, a surety upon paying the debt to the principal has the clear right to be substituted in the place of the creditor as to all securities held by the latter for the debt. Upon the sureties paying the notes which they signed as same became due, they would have been subrogated to all the rights of the complainant in and to the mortgage and the property therein included. By a clause in the mortgage, complainant had the right to declare all notes due upon default of any one of them and could foreclose the mortgage. Must the sureties, in order to protect their right to be substituted to the rights of complainant in the mortgage, be required to pay the entire indebtedness contrary to their undertaking upon the default of one note? They had the right, they may have prepared, to pay the notes as they matured and have had turned over to them the securities the complainant held; the acceleration clause in the mortgage, by the authority of which complainant has foreclosed or is foreclosing his mortgage, has impaired, or rather destroyed, this right. Were they required to pay these notes as they matured, they would have the right to demand of complainant the transfer of the mortgage unimpaired, which he had already foreclosed. It would be no answer to say that in this particular case it would be better for the sureties that the mortgage was foreclosed. The court is therefore of the opinion that complainant is not entitled to any relief against the sureties on the note.

"The court is further of the opinion that complainant is entitled to no relief against the defendant Kinney. The stock he took, with the exception of one horse, was under prior mortgages. This horse he took as payment of a debt due him by defendants, Mack Bros. The indebtedness was existing at the time of the execution of the mortgage on which this suit is based. The contract whereby the mortgagors were given the privilege of ex-

[Bright v. Mack, et al.]

changing and swapping the personal property rendered the mortgage void as to creditors."  •

(3) We concur with the chancellor in his finding and holding, except that we are of the opinion that the defendant Kinney was liable to the mortgagee, as for the horse which he purchased from the mortgagors, in payment of a pre-existing indebtedness due him from the mortgagors. The mortgage in question authorized the mortgagors to exchange the property mortgaged, for other property, which was to take the place of and stand in lieu of the property mortgaged. The provision in question was as follows: "It is hereby agreed and understood by and between the parties to said mortgage that said John Mack and Charlie Mack have the privilege of exchanging or swapping any of the personal property contained in said mortgage this day executed to J. M. Bright, and the property exchanged for is to stand for security to the said J. M. Bright in the place of the property exchanged. Said J. M. Bright hereby agrees and binds himself to release such of said property as is exchanged or swapped by the said John Mack and Charlie Mack and accept in lieu thereof a mortgage on said property exchanged for to stand for security of the notes described in said original mortgage."

(4) This we hold was not authority to sell or dispose of the property otherwise than by "exchanging or swapping," as above provided. Certainly it did not authorize a sale for the pre-existing debt, which, from its nature, could not be substituted. Such, or a similar provision in a mortgage, or by a subsequent agreement in writing, is valid as between the parties to the mortgage. —Jones on Chattel Mortgages, § 71; *Winslow v. Jones,* 88 Ala. 496, 7 South. 262; *Bloch & Co. v. Edwards,* 116 Ala. 90, 22 South. 600; *Averyt Drug Co. v. Ely-Robertson-Barlow Co.,* 194 Ala. 507, 69 South. 932.

Our cases hold that by reason of our statutes such an agreement must be in writing, in order for it to constitute a mortgage on the property substituted; and all the authorities hold that such a provision is not good as a mortgage upon the substituted property as against a bona fide purchaser of the substituted property, who has no knowledge or notice thereof, and that recording the mortgage or agreement does not serve as constructive notice as to the substituted property, because it cannot be described so as to give notice that it was exchanged for other property in the mortgage. These provisions, however, do not destroy the efficacy

[Bright v. Mack, et al.]

of this agreement as to exchange of property; because the substituted property is not here involved. It is the original property that is here involved, and it was not exchanged under the provision.

(5) It is argued by appellee that the provisions of the mortgage rendered the mortgage void as to purchasers of the property. This contention is not availing to Kinney, as to the horse in question, for the reason that he was not a bona fide purchaser of the horse; he only took the horse in payment of a pre-existing debt due him, or pro tanto, to the extent of $160. There is no question that the mortgage was executed in perfect good faith, to secure the payment of the purchase price of the property sold, which was mortgaged back to secure the purchase price. So there was neither actual nor constructive fraud in the execution of the mortgage, certainly, not so far as Kinney and the horse in question are concerned. There was no reservation of a benefit to the mortgagor, such as to make it void as to Kinney or other existing creditors at the time the mortgage was executed.

Cases like this are readily distinguishable from those in which the mortgagor incumbers his own property which is then subject to his own debts. Here, the property mortgaged was not the property of the mortgagors, but that of the mortgagee, excepting the rights which the mortgagors acquired by virtue of the purchase, free from the mortgagee, and as a part of the contract of purchase was mortgaged back to the mortgagee to secure the purchase price. The mortgagors themselves therefore never had any right or title to the property mortgaged, which was prior or paramount to that of the mortgagee, and of course their creditors could have none prior to the mortgagee.

(6) The mortgage being executed subsequent to the sureties' execution of the notes, it wrought a change in the contract between the mortgagors and the mortgagee, and thereby discharged the sureties. The contract of the sureties was expressed in the notes, and that was, to pay them only when they became due. The dates of maturity were stated in the notes: One matured August 1, 1914; one, October 1, 1914; one, December 1, 1914; one, February 1, 1915; one May 1, 1915; one August 1, 1915; one November 1, 915; and one February 1, 1916. They aggregated $10,000. The mortgage contract altered the contract as between the principal debtors, the mortgagors, and the payee, the mortgagee, to the effect that a failure to pay one of the notes

[Bright v. Mack, et al.]

when due should have the effect to mature all the notes subsequently falling due. There was a failure to pay some of the notes first falling due, and the mortgagee invoked that provision of the mortgage, and sought to enforce payment of all the notes. This, we hold, was a release of the sureties because an alteration of the contract between the principals, payment of which they agreed to secure at the time only mentioned in the notes.

(7-9) A surety, as we understand it, is a person who, being liable to pay a debt or perform an obligation, is entitled, if it is enforced against him, to be indemnified by some other person, who ought himself to have made payment or performed before the surety was compelled to do so. It is immaterial in what form the relation of principal and surety is established, or whether the creditor is or is not contracted with in two capacities, as is often the case when notes are given or bonds taken; the relation is fixed by the arrangement and equities between the debtors or obligors, and may be known to the creditor, or wholly unknown. If it is unknown to him, his rights are in no manner affected by it; but if he knows that one party is surety merely, it is only just to require of him that, in any subsequent action he may take regarding the debt, he shall not lose sight of the surety's equities. —*Smith v. Shelden*, 35 Mich. 48, 24 Am. Rep. 529; 7 Mayf. Dig. 743.

(10, 11) It is a familiar principle that a surety, though bound equally with the principal, stands in a purely voluntary and gratuitous relation, and that the extent of the liability incurred by him is that expressed or necessarily included in the words used in the contract or obligation. To the extent and in the manner stated in the contract he is bound, and no further. It must be strictly construed, according to the letter of the undertaking.—*City Council v. Hughes*, 65 Ala. 204; *Anderson v. Bellenger*, 87 Ala. 336, 6 South. 82, 4 L. R. A. 680, 13 Am. St. Rep. 46; *Brewery Co. v. Handley*, 90 Ala. 486, 7 South. 912; *May v. Bank*, 111 Ala. 510, 20 South. 459; 4 Mayf. Dig. 559. The relation of surety here was known to the creditor payee, and he could not, without the sureties' consent, alter the contract which they agreed to see performed by the principal debtor. We cannot know that they would have signed all these notes as sureties if they had known that a failure to pay the first, for $250, due August 1, 1914, would mature all the others aggregating $9,750, the last of which did not mature until February 1, 1916. This,

we hold, was a material alteration of the contract between the principals, and as stated had the effect to release the sureties.

It has been frequently held by this court that an extension of the time of payment of notes, or an agreement so to do, if binding on the parties—that is, based on a sufficient consideration—has the effect to release the sureties; but, so far as we find, this is the first time the question has been presented to this court, whether or not an agreement to compel payment, before the date fixed in the notes or bonds signed by the sureties, has the effect to discharge the sureties. The exact question here presented, was presented to the Kansas court, and was dcided as we now decide. The decision in that case is thus stated by the court itself, in a headnote: "One, who becomes security for the payment of a debt evidenced by three notes due, respectively, in one, two, and three years, is released from liability, if, without his assent, the principals on the notes and the creditor payee agree, upon sufficient consideration, that, upon the failure to pay either of said notes, they all shall become due and payable, and if, pursuant to such agreement, an action is brought within two years against the principals and the surety on the three notes."—*Peru Plow & W. Co. v. Ward,* 1 Kan. App. 6, 41 Pac. 64.

Abundant authority is quoted in the above case to sustain the holding, and we know of none to the contrary. We take from the opinion in that case the following quotations which we deem conclusive: " 'When he (the surety) has agreed that his principal shall pay money, or perform any other contract, by a specified day, the change of time to a different day is not the agreement into which he entered; and to enforce its performance would be to permit other and unauthorized persons to make for him a contract.'—*Flynn v. Mudd,* 27 Ill. 323. 'If the surety is sued upon the old agreement, to which alone his undertaking was accessory, he has only to show that that has ceased to exist, and no longer binds his principal; and, if he is sued upon the substituted agreement, he is entitled, both in law and equity, to make the short and conclusive answer, "Non hæc in fœdera veni." '—*Ide v. Churchill,* 14 Ohio St. 372; *Mayhew v. Boyd,* 5 Md. 102 [59 Am. Dec. 101]. The exact question involved in this case was considered, and thus commented on, in *Bacon v. Chesney,* 1 Starkie 192: 'The claim as against the surety is strictissimi juris, and it is incumbent on the party to whom the guaranty is given, and who is enforcing it against the surety, to show that he has strictly complied with

[Brindley v. Brindley.]

the terms of the guaranty; and therefore, if one engage to guaranty the debt of another, provided 18 months' credit be given, the creditor is not at liberty to vary it by giving 12 months only, and after the expiration of six more, to call upon the surety; but the surety in such a case would be discharged. The same principle applies to the facts of this case, with the same legal effect."

It follows that the decree appealed from should be affirmed in part, and reversed and rendered in part. The decree should have been against the defendant Kinney for the value of the horse purchased by him, which was shown to be $160, but in all other respects it was correct and should be affirmed. Let a decree be here entered in accordance with this opinion.

Affirmed in part, and in part reversed and rendered.

ANDERSON, C. J., and SOMERVILLE and THOMAS, JJ., concur.