163 So. 351

### BRADLEY v. BENTLEY.

7 Div. 306.

Supreme Court of Alabama.

May 9, 1935.

Rehearing Denied Oct. 10, 1935.

Ross Blackmon, of Anniston, opposed.

Merrill, Jones & Whiteside, of Anniston, for the motion.

KNIGHT, Justice.

This cause comes to this court on petition for writ of certiorari to the Court of Appeals, to review and revise the opinion and judgment of that court in the case of Mrs. May Bradley v. W. H. Bentley.

The Court of Appeals in the opinion filed in the cause held that, as to the in-

debtedness to the Commercial National Bank of Anniston, Ala., the petitioner here, the said W. H. Bentley, was the principal and Mrs. May Bradley was his surety.

In this view we are in accord with the Court of Appeals, upon the facts found by that court, and which appear in the court's opinion.

In the case of State v. Parker, 72 Ala. 181, it was observed: "A contract of suretyship is usually defined to be a contract whereby one person engages to be answerable for the debt, default, or miscarriage of another. Brandt on Suretyship, § 1. In Evans v. Keeland, 9 Ala. 42, 56, it was said to be 'an obligation accessorial to that of the principal debtor.' It was further observed: 'The debt is due from the principal, and the surety is merely a guarantor for its payment. A corollary from this definition is, that it is of the essence of such a contract that there be a valid obligation of the debtor.' Id. 9 Ala. [42] 46."

And in the case of Tennessee-Hermitage National Bank v. Hagan, 218 Ala. 390, 119 So. 4, 9, it was said: "The relation of principal and surety is also defined as, when one is liable to pay the debt or discharge the obligation, or [and] is entitled, if enforced against him, to indemnity from him who ought to have made the payment or performed before the surety was so compelled. It is immaterial in what form the relation is established. The relation of principal and surety is fixed by arrangements and equities between the debtors or obligors, and may be known or unknown to the creditor. Bright v. Mack, 197 Ala. 214, 72 So. 433. See definition of Suretyship in Rollings v. Gunter, 211 Ala. 671, 101 So. 446; 12 A. L. R. 722, note; Hoffman v. Habighorst, 38 Or. 261, 63 P. 610, 53 L. R. A. 911; 32 Cyc. 32, note; Leonard v. State Exchange Bank (C. C. A.) 236 F. 316; Moerschel v. O'Bannon (C. C. A.) 246 F. [887] 891."

Section 9548 of the Code provides: "If the fact of suretyship does not appear on the face of the contract, it may by proved by parol, either before or after the judgment."

The obligation of the Commercial National Bank of Anniston, as between Bentley, the tenant, and Mrs. Bradley, the landlord, was the primary obligation of the tenant. He received from the bank the moneys advanced, and Mrs. Bradley was his surety.

The next question presented for determination is, Did Mrs. Bradley pay the debt, or any part of it, for which she was surety? If she did, she, by force of sections 9544 and 9553, was thereby subrogated, both at law and in equity, to all the rights of the creditor, the said Commercial National Bank of Anniston. Thrasher et al. v. Neeley, 196 Ala. 576, 72 So. 115; Reese v. Mackentepe, 224 Ala. 372, 140 So. 550.

It is insisted by Bentley, the tenant, that Mrs. Bradley did not pay the mortgage indebtedness to the bank, nor any part of it; that the rent cotton was never delivered by him to Mrs. Bradley, nor did she ever have possession of the same; that she had no legal title to any part of the cotton grown on the rented premises; that, while as landlord, she had a lien upon the cotton, this lien was not a jus ad rem, nor a jus in re. We have so held. Jackson v. Bain, 74 Ala. 328; First National Bank of Stevenson v. Crawford et al., 227 Ala. 188, 149 So. 228.

If, however, Mrs. Bradley did in fact pay a part of the principal's debt to the bank, and the tenant paid the balance, so that the debt to the creditor was entirely discharged, then, and in that event, the surety would be subrogated pro tanto to the right of the bank. This precise question was so decided in the case of Magee v. Leggett, 48 Miss. 139, 146, wherein it was said: "We do not understand the rule as requiring that the 'surety' must make entire payment; it is enough if the creditor has been fully paid, part by the principal debtor, and part by the surety. In such case, subrogation will accrue pro tanto to the extent of his payment."

To the same effect is the holding in the cases of Comins v. Culver, 35 N. J. Eq. 94, and Wilkins v. Gibson, 113 Ga. 31, 38 S. E. 374, 84 Am. St. Rep. 204.

Subrogation has always been one of the recognized subjects of equity jurisdiction. No one, we assume, would question the right of a surety, where property, upon which he had a lien, had been exhausted in payment of the obligation of the principal, to invoke the jurisdiction of a court of equity to enforce equitable subrogation to the rights of the creditor, whose claim had been paid by the proceeds of the property upon which this surety had a lien.

Such a right is founded upon the plainest principles of equity and morality.

Sections 9544 and 9553, Code, while in a sense are declaratory of the equitable right of subrogation, as it existed at common law, go further and furnish the surety a remedy at law for the enforcement of the right.

With these applicable principles in mind, a brief statement of the facts, as found by the Court of Appeals, will serve to demonstrate that the surety, Mrs. Bradley, was entitled to recover the property sued for in this action. The facts were: Mrs. Bradley was the landlord and Bentley the tenant during the year 1931. By the terms of the rental contract, Bentley was to pay Mrs. Bradley, as rent, one-fourth of the crops. In March, 1931, the tenant desiring advances in money to make the crop and plaintiff being willing to assist him, applied to the Commercial National Bank of Anniston for a loan, and at the suggestion of the cashier of the bank, defendant executed a note and mortgage to plaintiff, which included the crop for 1931 and the mules and wagon involved in this suit. Plaintiff in turn indorsed the note, transferred the mortgage to the bank, and the amount was placed to the credit of defendant subject to his check. The entire amount was subsequently drawn out and used by the defendant.

In the fall the defendant gathered from the rented land 14 bales of cotton, had it ginned, placed in a warehouse, and the receipts placed with the bank, who held them until the spring of 1932, when the bank delivered the receipts to defendant with instructions that the cotton be sold and the proceeds brought to the bank. This was done and the amount extinguished the note and mortgage, which the bank marked paid and delivered them to the defendant. The mortgage having been duly recorded and also the transfer, the bank subsequently canceled the same on the record. The evidence is without dispute that plaintiff has never received pay for her part of the 14 bales of cotton used by defendant in paying his debt to the bank. The foregoing is a short statement of the facts as found by the Court of Appeals.

In Price v. Pickett, 21 Ala. 741, it was held: "Where the possession is not adverse, the true owner is entitled to recover the rents which have been received by another; in such case, it is money had and received to the use of the owner; and, as the person to whom the rent was paid would be compelled to account in equity, he may also be held responsible in the equitable action for money had and received."

In Westmoreland v. Foster, 60 Ala. 448, it was held that the assignee of a note, given for rent of land, may maintain an action for money had and received against a purchaser of the tenant's crop, who, having bought with knowledge of his lien, has sold the crop, and received the proceeds of the sale; and he may also maintain a bill in equity against such purchaser, notwithstanding his remedy at law.

In our recent case of Patton et al. v. Darden, 227 Ala. 129, 148 So. 806, 808, it was observed: "And it was long ago held in this state that one, who receives the price of property sold by him, having notice that another has a lien on such property, may be compelled in equity to account for such purchase price as being held in trust, or may be sued at law in the equitable action for money had and received. Price v. Pickett, 21 Ala. 741; Westmoreland v. Foster, 60 Ala. 448, 455; Ehrman v. Oats, 101 Ala. 604, 606, 14 So. 361; Peters v. Rhodes, 157 Ala. 25, 47 So. 183; Thompson v. Thompson, 107 Ala. [163] 169, 18 So. 247, 250. See, also, Clews v. Jamieson, 182 U. S. 461, 21 S. Ct. 845, 45 L. Ed. 1183."

And in the case of Webb & Aigner v. Darrow, 227 Ala. 441, 150 So. 357, it was held: "The lien [landlord's] follows the proceeds of crops so long as they may be identified in the hands of the tenant or other person with notice of such lien. The equitable action at law for money had and received is merely cumulative and not exclusive of the general jurisdiction in equity for an accounting as for funds impressed with a trust."

The foregoing authorities demonstrate that as between plaintiff and defendant, but for the claim of the bank, the plaintiff, landlord, on the sale of the cotton by the defendant, could have sued the latter at law, in the equitable action of money had and received, and have recovered one-fourth of the proceeds of the cotton. These authorities further demonstrate that the plaintiff in equity and good conscience was entitled to one-fourth of the proceeds of the cotton. And when these proceeds were applied to the payment of the note and mortgage held by

the Commercial National Bank in extinguishment of the tenant's debt to the bank, the transaction must be regarded as a payment, pro tanto, by the surety, landlord, of the principal's obligation, and thereupon the surety's right to subrogation, eo instanti, sprang into existence. And under the express provisions of section 9553, Code, Mrs. Bradley was subrogated, both at law and equity, to all the rights of the creditor, the said Commercial National Bank of Anniston, and invested under the mortgage with the legal title to the mules and wagon sued for in this action. Thrasher v. Neeley, 196 Ala. 576, 72 So. 115; Reese v. Mackentepe, 224 Ala. 372, 140 So. 550.

The fact that the Commercial National Bank marked the note and mortgage "paid" and also canceled the same upon the record cannot alter the situation or defeat Mrs. Bradley's right of subrogation. Dabney v. Brigman Motors Co., 32 Ga. App. 652, 124 S. E. 370. Of course, this statement is made upon the assumption that the rights of a bona fide purchaser are not involved.

The mortgage was executed by the defendant, and it was not permissible for him in order to defeat recovery to show an outstanding title in another. Pruitt v. Gunn, 151 Ala. 651, 44 So. 569.

The several matters which impel Mr. Justice BROWN to dissent, as indicated by his dissenting opinion, concurred in by Mr. Justice BOULDIN, have had our careful consideration. We are impressed that the dissenting opinion is based upon a misconception of the real question involved.

We are not in the least concerned here with the relation that existed between Mrs. Bradley and the bank, but only with the status of the indebtedness, and the relation thereto of Mrs. Bradley and the defendant Bentley, as between themselves.

It is quite true that as between Mrs. Bradley and the bank, the former was the indorser, and liable as such for the payment of the note under the conditions imposed by law upon her as such indorser. But the debt, as between the landlord and tenant was wholly the indebtedness of the latter. He received every penny of the money, and the primary, moral, and legal obligation was upon him to pay it, not in part but in its entirety. As between these two named parties, the landlord, Mrs. Bradley, was unquestionably a surety. "The question of who is principal, or who is the surety, is not determined by the form of the contract, but by the inquiry as to who received the consideration for which the obligation was executed." See note, section 1, chapter XLI, page 1539, Daniel on Negotiable Instruments (7th Ed.); Wallace v. M'Connell, 13 Pet. 136, 10 L. Ed. 95; Blair v. Bank of Tenn., 11 Humph. (Tenn.) 84; Gunnis v. Weigley, 114 Pa. 191, 194, 6 A. 465; Chitty on Bill (13 Am. Ed.) [411] 463.

In section 1501, Daniel on Negotiable Instruments (7th Ed.) it is stated: "In the first place, as to who are to be regarded as principals, and who as sureties. The acceptor of a bill and the maker of a note, when the acceptance is made or note executed upon a valuable consideration, are undoubtedly principals as to all the parties thereto. And the drawer of such a bill, and the indorsers of such a bill or note, are sureties of the acceptor or maker to the holder. * * * Thus, if the bill were payable to the drawer's order, and accepted, and then indorsed by the drawer and two subsequent indorsers successively, to the holder, the drawer and indorsers would be sureties of the acceptor to the holder. But as between the holder and the drawer, the drawer *is the principal debtor, and the indorsers sureties.* (Italics supplied.)

In section 1503, same work, the author says: "The fact that the liability of the drawer or indorser is fixed by due demand and notice, does not *alter their relation as surety of the debt; it simply fixes their liability as sureties for its payment,* provided nothing is done by the creditor to exonerate them. This view is established by great weight of authority, and may be regarded as settled." (Italics supplied.)

In the case of Stephens v. Monongahela National Bank, 88 Pa. (7 Norris) 157, 32 Am. Rep. 438, it is said: "As between maker and endorsers the relation of principal and surety exists, and each prior party is a principal for each subsequent party. In an action by one who has paid the holder, extrinsic evidence may be admissible to show that the maker, in fact, is surety for the endorser."

In 21 R. C. L. p. 952, § 7, the principle is stated: "As between maker and indorsers the relation of principal and surety exists, and each prior party is a principal for each subsequent party."

In the case of State Savings Bank v. Baker, 93 Va. 510, 25 S. E. 550, it is observed: "An endorser of a negotiable note for the accommodation of the maker is a surety of the maker."

In the case of Tanner v. Gude, 100 Ga. 157, 27 S. E. 938, 939, it was observed by Simmons, C. J.: "The contention of counsel for the defendant in error was that, if the indorsement was for value, the indorser was not a surety, and therefore was not discharged by the extension. It is true, there is a distinction between an ordinary indorser and one who is merely a surety, but a contract of suretyship is necessarily included in every unqualified indorsement of a negotiable instrument (2 Daniel, Neg. Inst. §§ 1303, 1305; McCay, J., in Freeman v. Cherry, 46 Ga. [14] 16); and the principle which protects sureties from any act of the creditor tending to injure the surety or increase his risk is applicable as well to indorsers for value as to those whose indorsement is for accommodation merely."

We think it clear on principle and authority that Mrs. Bradley, as between herself and Mr. Bentley, was the surety of the debt, and that having paid a part of the same, she was subrogated both at law and in equity, pro tanto, to all the rights of the creditor bank, and invested with the legal title of the bank to the property conveyed by the mortgage. Code, §§ 9544, 9548, and 9553.

■ It is insisted in the dissenting opinion of Mr. Justice BROWN that the Legislature, in the adoption of sections 9548, 9552, 9553 of the Code, used the word "surety" in its strict sense, for the reason that in section 9552, it dealt with indorsers with a different result, limiting the subrogation to control judgments recovered against the principal debtor, and paid by the indorser.

We find no warrant in the statute which requires that the term "surety" shall be construed to mean anything more or less than one who has been forced to pay a debt, which was the primary obligation of another, and which the latter ought to have paid in exoneration of the former.

We are persuaded that the learned author of the dissenting opinion has laid too much stress and emphasis upon the form of the transaction, entirely overlooking the fact that the wholesome and benevolent doctrine of subrogation does not arise out of contract, no matter what its form may be, but is founded upon natural justice, that one who pays the debt of another should be substituted for, and have all the rights and remedies transferred to him, that were afforded by law to the one whose debt is thus paid. Whitbeck v. Ramsay, 74 Ill. App. 524. And it has been long the settled law of this state that as between the maker and the indorser, an accommodation indorser stands to the maker in the relation of a surety. Knighton et al. v. Curry et al., 62 Ala. 404; Meek & Co. v. Black et al., 4 Stew. & P. 374.

In the case of Enders v. Brune, 4 Rand. (Va.) 438, 447, it was forcefully observed: "The doctrine of substitution * * * has nothing of form, nothing of technicality about it; and he who, in administering it, would 'stick in the letter,' forgets the end of its creation, and perverts the spirit which gave it birth. It is the creature of equity [now by the force of sections 9548, 9552, and 9553 'naturalized' in law], and real essential justice is its object."

The plain purpose of the above-quoted sections of the Code was to make subrogation, a native of equity but an alien in law, enforceable in the courts of law. What the Code did was to break down the exclusiveness of equity and carry the right of substitution and subrogation into law, by its own vigor, so as to make equity and law concurrent and coequal with respect to this subject-matter. This statutory remedy is cumulative, and affords a remedy at law to one who has a right of present substitution, making it unnecessary for him to appeal to a court of equity. Such was the true and manifest purpose of the statute. It declared no new right, but simply a new tribunal. Hudson Trust Co. v. Elliott, 194 Ala. 441, 69 So. 631.

In the case of Lidderdale's Ex'rs v. Ex'r of Robinson, 12 Wheat. 594, 6 L. Ed. 740, the Supreme Court of the United States, in passing upon a case arising in the state of Virginia, after holding that an indorser is a surety of the drawer or maker of a bill or note, announces the following rule as to the right of such a surety: "That a surety, who discharges the debt of the principal, shall, in general, succeed to the rights of the credi-

tor, as well direct as incidental, is strongly exemplified in those cases in which the surety is permitted to succeed to those rights, even against bail, who are themselves in many respects regarded as sureties. 2 Vern. 608; 11 Ves. 22. That such would be the effect of an actual assignment made by the creditor to the surety, or to some third person for his benefit, no one can doubt. But, in the cases last cited, we find the court of equity lending its aid to compel the creditor to assign the cause of action, and thus to make an actual substitution of the sureties, so as to perfect their claim at law. This fully affirms the right to succeed to the legal standing of their principal; and, after establishing that principle, it is going but one step farther, to consider that as done, which the surety has a right to have done in his favor, and thus to sustain the substitution, without an actual assignment. And accordingly, we find the dictum expressed in Robinson v. Wilson, 2 Madd. 434, in pretty general terms, 'that a surety who pays off a specialty debt shall be considered as a creditor by specialty of his principal.' "

*Let it be understood that the court in the above case was dealing with an indorser, who had paid the obligation of the maker, and in all respects the indorser was treated as a surety, and his rights were assimilated to those of an ordinary surety.*

In the case of Edward W. Nettleton v. Ramsey County Land & Loan Co., 54 Minn. 395, 56 N. W. 128, 40 Am. St. Rep. 342, it was held that an indorser who had become liable on notes secured by a mortgage was entitled upon payment thereof to be subrogated to the rights and remedies of the holder of the notes, and might recover of the defendant the amount which he was obliged to pay. That the right of subrogation extended in such case not merely to the mortgage security, but to the debt and the remedies to enforce the same. This case also recognizes the principle that the indorser was regarded as a surety, with all the rights and remedies of such.

There is nothing in the above holdings which conflicts in the least with what we held in the cases of Holczstein et al. v. Bessemer Trust & Savings Bank, 223 Ala. 271, 136 So. 409, Day v. Thompson, 65 Ala. 269, 273, 274, and Pointer v. Farmers' Fertilizer Co., 230 Ala. 87, 160 So. 252. In those cases we were dealing with quite a different question. It has never been the law that as between the surety and principal, the former could not show that, while appearing as a comaker or indorser, he was a surety. This rule existed at common law, and by section 9548 it is given statutory recognition.

In the case of Holczstein et al. v. Bessemer Trust & Savings Bank, supra, in an opinion written by Mr. Justice Brown, it was expressly held that one who signs with another as joint maker of a promissory note, when sued, may plead and prove in discharge of his liability, that he was a surety, in connection with any facts that release his liability; but, of course, this means in cases where no rights of an innocent purchaser are involved.

In the dissenting opinion, much stress is placed upon the following words found in the opinion of the Court of Appeals: *"There was evidence tending to prove that plaintiff was a mere surety for defendant in obtaining the loan."* We attach no importance to this added statement of the Court of Appeals, as the court proceeded at great length to state all the facts with reference to the transaction, and these facts, as found by that court, conclusively establish that Mrs. Bradley was the surety of the defendant, Bentley, in the transaction, and that she in fact paid a part of the debt for which she was surety.

We have heretofore stated our conclusion that, as the proceeds of the cotton raised upon the rent premises, including a part that in equity and good conscience belonged to Mrs. Bradley, were used in the payment of the mortgage, Mrs. Bradley, to the extent that her part of the proceeds were used in the extinguishment of the mortgage, must be regarded as having paid the mortgage debt, certainly to that extent.

The position taken in the dissenting opinion that, because Mrs. Bradley had no legal title to any part of the cotton, therefore, it could not be held that she paid any part of the mortgage debt, is so untenable as really to call for no further treatment. We think we have heretofore shown the fallacy of this argument advanced in the dissenting opinion. However, a case decided by the Supreme Court of North Carolina is very much in line with the instant case, and we feel that it would not be amiss to refer to it. In some respects it is very similar to the case now before

us. We refer to the case of Bryan Tripp v. Henry Harris, 154 N. C. 296, 70 S. E. 470, 471, 35 L. R. A. (N. S.) 348. The plaintiff in that case was the landlord, and the defendant (as here) was the tenant. The facts were: On January 21, 1909, the defendant, who was then a tenant of the plaintiff, purchased a horse of J. R. Harvey & Co., at the price of $130, and executed his note therefor, to which the plaintiff was surety. On the same day the defendant executed to the said Harvey & Co. a chattel mortgage to secure said note, by which he conveyed said horse, an iron-axle cart, *and the crops to be raised by him in 1910*. The plaintiff joined in the execution of said mortgage. The plaintiff as landlord made advances to· the defendant during said year to enable him to make a crop, amounting to $289.34, and he received from the proceeds of the crops $239.38. The defendant demanded that said proceeds be applied to the satisfaction of said debt and mortgage of $130, which the plaintiff refused to do. The plaintiff applied the proceeds of the crop to said account for supplies, *and brought an action to recover the horse and cart,* claiming to be the owner by virtue of said mortgage.

The defendant resisted recovery upon two grounds: (1) That a payment by the plaintiff, who was surety, and taking an assignment to himself, extinguished the debt; (2) that by executing the mortgage, the plaintiff agreed that the crops should be applied in payment of the debt of $130, and that this could not be changed without the consent of the defendant.

Thus the case there was between landlord and tenant, principal and surety, on a note and mortgage which the surety had paid.

The court in upholding plaintiff's right to recover the property announced its conclusions upon the facts and law of the case as follows: "We therefore conclude that the plaintiff, upon paying the note, and taking an assignment to himself of the note and mortgage, became a simple contract creditor of the defendant, and the owner of the mortgage to secure payment of his debt. He was also landlord, and his lien on the crops to secure advances was superior to that as owner of the mortgage, and he had the right, against the will of the defendant, to apply the crops first to the account for supplies, *unless his act in signing the mortgage prevents him*

*from doing so. We do not think it has this effect. The purpose and effect of the execution of the mortgage was to relinquish his lien in favor of Harvey & Co. to enable the defendant to buy a horse, and not to surrender his rights against his tenant."*

In this case there was, it is true, an assignment of the note and mortgage to the landlord, plaintiff, but the court there referred to the fact that in a number of states, by statute, the surety is treated as a purchaser, and he takes the evidence of indebtedness and all securities as they exist in the hands of the creditor. Alabama has, by statutory enactments, aligned itself with those states providing that a surety who has paid the debt of his principal is subrogated, both at law and in equity, to all the rights of the creditor; and is to be regarded, after the payment, as the purchaser of the debt and all its incidents. Thrasher et al. v. Neeley, supra; Code, §§ 9544, 9553.

Another insistence made in the dissenting opinion of Mr. Justice BROWN is, that, if the plaintiff was to receive as rent one-fourth of the cotton, which amounted to 3½ bales, "and if the value of this cotton be estimated at from 10 to 15 cents per pound, the recovery was certainly excessive, and the trial court's order granting a new trial should not be reversed" by the Court of Appeals.

No such argument is either advanced or hinted at in brief of counsel for petitioner. The learned justice seems to entirely overlook the fact that the only questions presented here for review arise upon the detinue phase of the case by mortgagee (assignee) against the mortgagor. The suit in this respect seeks to recover, under the mortgage, the specific chattels conveyed thereby. Assuming that plaintiff is finally successful in recovering possession of the property, her relation thereto will be that of mortgagee in possession. The property must be sold, agreeable to the terms of the mortgage, to satisfy, not the entire amount represented by the mortgage, but the amount actually paid by Mrs. Bradley (by the proceeds of her part of the rent cotton), and any surplus must be paid over to the mortgagor, or any one succeeding· to his right to the surplus.

Besides, the suit was between mortgagee, or assignee, and mortgagor; if the mortgagor had desired he could have had the indebtedness due Mrs. Bradley ascer-

36

tained by the jury, and have paid the amount so ascertained by the jury, and cost, and no execution could thereafter issue. Code, § 7400.

There is nothing, as we see it, of force in the last insistence of the learned justice, which should lead to a reversal of the judgment of the Court of Appeals.

Writ denied.

ANDERSON, C. J., and GARDNER, THOMAS, and FOSTER, JJ., concur.

BROWN, Justice (dissenting).

The first count of the complaint is in detinue for the recovery of five mules, two two-horse wagons, 500 bushels of corn in shuck, and 300 bushels of cotton seed; the second is in trover for the conversion of the same property.

The plea was the general issue, pleaded in short by consent, with leave to give in evidence any matter that would constitute a defense if properly pleaded.

At the conclusion of the evidence the court, at plaintiff's request, gave the affirmative charge in writing for the plaintiff. The verdict which followed was for the plaintiff under the detinue count for the possession of the mules and wagons, or their alternate value, aggregating $285 and $110 for their wrongful detention; and under the trover count for $280 as damages for the conversion of 500 bushels of corn and 300 bushels of cotton seed, a total of $675.

On motion of the defendant the verdict was set aside and a new trial ordered, and the plaintiff appealed to the Court of Appeals, where the order granting the new trial was reversed and the judgment on the verdict was reinstated.

The Court of Appeals, as a predicate for this reversal, finds the following facts:

"In 1931, plaintiff and defendant were respective landlord and tenant upon a contract whereby defendant was to cultivate plaintiff's land and to divide the crops. The only crop involved here is the cotton, the others having been disposed of in other ways. As to the cotton, defendant was entitled to three-fourths and the plaintiff to one-fourth. In March, 1931, the defendant desiring advances in money with which to make the crops and plaintiff being willing to assist him, applied to the Commercial National Bank for a loan and at the suggestion of Mr. Bell, president of the bank, defendant executed a note and mortgage to plaintiff, which included the crop for 1931 and the mules and wagons involved in this suit. Plaintiff in turn indorsed the note, transferred the mortgage to the bank, and the amount was placed to the credit of defendant subject to his check. The entire amount was subsequently drawn out and used by defendant.

"In the fall the defendant gathered from the rented land fourteen bales of cotton, had it ginned, placed in a warehouse, and the receipts placed with the bank, who held them until the spring of 1932, when the bank delivered the receipts to defendant with instructions that the cotton be sold and the proceeds brought to the bank. This was done and the amount extinguished the note and mortgage, which the bank marked paid and delivered them to the defendant. The mortgage having been duly recorded and also the transfer, the bank subsequently canceled same on the record. *There was evidence tending to prove that plaintiff was a mere surety for defendant in obtaining the loan* and the evidence is without dispute that plaintiff has never received pay for her part of the fourteen bales of cotton used by defendant in paying his debt to the bank. On payment of the debt due the bank, with the proceeds of the fourteen bales of cotton, *one-fourth of which belonged to plaintiff*, the legal and equitable title to note and mortgage immediately became vested in plaintiff." (Italics supplied.)

The Court of Appeals in the opinion of that court, and the majority opinion of this court, base the plaintiff's right to recover on the provisions of section 9544 of the Code of 1923, which provide that "*a surety who has paid his principal's debt* is entitled to a transfer of the original and collateral security which the creditor holds; he has all the rights to realize thereon and to reimburse himself to the same extent as the creditor." (Italics supplied.)

It is clear that the Legislature in the adoption of this statute along with sections 9548, 9552, and 9553, used the word "surety" in its strict sense in said section and in sections 9548 and 9553, for in section 9552 it dealt with "indorsers" with a different result, limiting the subrogation to control of judgments recovered against the principal debtor, and paid by the in-

dorser. Therefore, to bring this case within the influence of this statute, the plaintiff had the burden of showing that she was a surety on the note *executed by the defendant Bentley to the plaintiff and indorsed by plaintiff to the bank,* and that she had paid the debt of Bentley to the bank. Thrasher et al. v. Neeley, 196 Ala. 576, 72 So. 115; Reese v. Mackentepe, 224 Ala. 372, 140 So. 550; Smith et al. v. Pitts, 167 Ala. 461, 52 So. 402. The statement of the question conclusively demonstrates that Mrs. Bradley, the plaintiff, was not a surety on the note. "Contracts of suretyship and of guaranty have much in common—in both the undertaking is to answer for the debt, default, or miscarriage of another. The difference is that a surety insures the debt, is bound with his principal as an *original promisor,* is a debtor from the beginning; a guarantor answers for the debtor's solvency, must make good the consequences of his principal's failure to pay or perform, is bound only in case his principal is unable to pay or perform. To this effect is Saint v. Wheeler Mfg. Co., 95 Ala. 362, 10 So: 539, 36 Am. St. Rep. 210; 20 Cyc. 1400. From this difference, one consequence of importance in respect of the procedure to be followed in the enforcement of liability flows: 'A principal and a surety, being equally bound, may be joined in the same suit; but a guarantor, being bound by a separate contract, must be sued separately.'" J. W. Watkins Med. Co. v. Lovelady et al., 186 Ala. 414, 419, 65 So. 52, 54. (Italics supplied.)

The facts as found by the Court of Appeals were that the note and mortgage covering the cotton, to be grown by the defendant as tenant for the year 1931, were executed and delivered to the plaintiff, and the note was then indorsed and delivered to the bank, and the mortgage transferred to the bank. In these circumstances the plaintiff, by virtue of the statute, as well as the common law as settled in this state, was a regular indorser, and hence a conditional guarantor of the debt to the bank, and the terms and legal effect of the contract could not be varied by parol evidence. Day v. Thompson, 65 Ala. 269, 273, 274. In that case it was observed: "The contract imported by the regular indorsement of a bill or note is of a fixed and definite character, and is interpreted by the law. It is legally incapable of explanation, contradiction, or modification, by parol evidence. This rule is founded on the soundest principles of reason and public policy, as well as on the weightiest authority. The reasons for its application to commercial paper are more cogent, if anything, than to other written contracts. In Tankersley v. Graham, 8 Ala. [247] 251, the rule was declared by this court, in discussing its application to indorsements, to be too firmly established to be now unsettled, even if its correctness were doubted"; and the statute confirms this rule as to all indorsements, whether regular or irregular, unless the indorser· "clearly indicates by appropriate words his intention to be bound in some other capacity." Code 1923, § 9089.

The rule stated in Day v. Thompson, supra, was restated and applied in Holczstein et al. v. Bessemer Trust & Savings Bank, 223 Ala. 271, 136 So. 409, along with a statement of the rule applicable to irregular indorsements, without noting the change wrought by the statute. Pointer v. Farmers' Fertilizer Co., 230 Ala. 87, 160 So. 252; 8 C. J. 75, § 122.

The plaintiff being an indorser on the face of the contract, and not a joint maker of the note, section 9548, which is merely declaratory, is not applicable. The rule as to a joint maker who signs as a surety is also restated in Holczstein et al. v. Bessemer Trust & Savings Bank, supra, where the authorities are collected.

However, if it be assumed that section 9548 is applicable, the most that the opinion of the Court of Appeals finds is, *"There was evidence tending to prove that plaintiff was a mere surety for defendant in obtaining the loan."* (Italics supplied.) This, at most, made the question one for the jury, and the trial court erred in giving the affirmative charge in favor of the plaintiff. This error justified the court in granting a new trial, and the Court of Appeals erred in reversing the order of the court granting a new trial.

The statement of facts in the opinion of the Court of Appeals does not show that the plaintiff paid the debt of Bentley to the bank. There was no division of the cotton separating the rent cotton from the entire mass, and if it should be conceded that the plaintiff as landlord could waive her landlord's lien as to the bank, and at the same time reserve it against the defendant, the lien is not property or the right of property. It is but a statutory legal right to charge the crops with

the payment of the rent, in priority to all other rights or liens, the property and right of property remaining in the tenant. This question was settled more than a half of a century ago by this court speaking through Brickell, C. J.: "The lien is not property, or a right of property. It is a statutory legal right to charge the crops with the payment of the rents * * * the property and right of property remaining in the tenant." Wilson v. Stewart, 69 Ala. 302; Stern v. Simpson & Johnson, 62 Ala. 194; Ehrman v. Oats, 101 Ala. 604, 14 So. 361; First Nat. Bank of Stevenson v. Crawford et al., 227 Ala. 188, 149 So. 228. The cotton was not tortiously disposed of by the tenant, but devoted to the payment of a debt in accordance with the arrangement of the parties. Nor did the tenant receive money therefor. In these circumstances there is no basis for the assertion that the proceeds of the cotton or any part thereof ex aequo et bono belonged to the plaintiff, in such sort as to support an action for money had and received. Connecticut General Life Ins. Co. v. Smith, 226 Ala. 142, 145 So. 651; Moody v. Walker, 89 Ala. 619, 7 So. 246.

The full property in the cotton devoted to the payment of the debt to the bank being in Bentley, there is no basis for the contention that the delivery of the cotton or its proceeds to the bank in payment of the debt was a payment in whole or in part by the plaintiff, and the case is wholly outside of the influence of section 9544 of the Code.

"Payment" is the transfer of *property* absolutely in the performance of an obligation. Winchell, Executor, et al. v. Sanger et al., 73 Conn. 399, 47 A. 706, 66 L. R. A. 935; 21 R. C. L. 7, § 1; Smith et al. v. Pitts, 167 Ala. 461, 52 So. 402.

The plaintiff not having any *property* in the cotton, its delivery by the owner, Bentley, to the bank in discharge of his obligation was not a payment in whole or in part, in law, by the plaintiff.

In the following cases, Reese v. Mackentepe, 224 Ala. 372, 140 So. 550, Thrasher et al. v. Neeley, 196 Ala. 576, 72 So. 115, and Anniston Banking Co. v. Green, 197 Ala. 567, 73 So. 81, there was no question but that the party making the payment was the surety, and the money paid was the property of the surety; therefore, these cases do not support the holding of the Court of Appeals.

There is another matter apparent on the statement of facts: The plaintiff was to receive one-fourth of the cotton as rent —3½ bales—and if the value of this cotton be estimated at from 10 to 15 cents per pound, the recovery was certainly excessive, and the trial court's order granting a new trial should not be reversed.

The plaintiff could not recover more than the amount of her claim under the trover count. Karter v. Fields, 130 Ala. 430, 30 So. 504.

I therefore respectfully dissent.

BOULDIN, J., concurs in the foregoing dissent.

### On Rehearing.

PER CURIAM.

Application for rehearing overruled.

ANDERSON, C. J., and GARDNER, THOMAS and FOSTER, JJ., concur.

BOULDIN, J., concurs in the result only.

BROWN, J., dissents.