This case involves the enforcement of a suretyship contract.
Firemen's Insurance Company of Newark, New Jersey (surety), appeals from a final judgment entered by the Probate Court of Mobile County in the amount of $61,472.40. The following facts are undisputed: On July 27, 1992, the Probate Court of Mobile County appointed Jennie W. Pugh as the guardian and conservator over the estate of Genevieve M. Sherman, an incapacitated person (ward). Thereafter, Pugh filed a bond in the amount of $63,000, pursuant to Ala. Code 1975, § 26-2A-139, which requires a conservator "to furnish a bond payable to the judge of probate conditioned upon faithful discharge of all duties of the trust according to law, with sureties as it shall specify." The bond named Pugh as the principal and Firemen's as the surety. At all times relevant to the probate proceedings, Pugh employed, and was represented by, an attorney.
In September 1992 Pugh's attorney directed her to withdraw the ward's funds, which were on deposit at Central Bank, and to endorse them over to him for the purpose of reinvesting them with AmSouth Bank, which offered a higher rate of interest. Pugh complied with this request and transferred the monies to her attorney via a cashier's check, which was endorsed "for deposit only." Approximately two years later, the attorney died of a self-inflicted gunshot wound. Pugh, upon learning of the death, discovered that the monies were not on deposit at AmSouth Bank. In fact, the attorney converted the monies to his own use.
On November 8, 1994, Pugh filed a conservator's motion for accounting by surety, wherein she alleged that she suffered a loss of her ward's funds due to her attorney's misfeasance.
On July 12, 1995, the probate court entered an order, which stated in pertinent part:
 "Upon due consideration of the testimony and evidence adduced and the arguments and briefs submitted by counsel, the Court FINDS that there existed an agent relationship by and between Jennie Pugh, as Conservator of the above-referenced estate, and . . . her counsel. Accordingly, the Court is of the opinion and does FIND that the said Conservator by her actions and Firemen's Insurance Company of Newark, New Jersey, as the surety on her bond, are liable for any mismanagement of estate assets by said counsel."
(Emphasis in original.)
On December 27, 1995, the court entered a final judgment against the surety in the amount of $61,472.40.
The surety appeals.
The dispositive issue is whether the probate court erred in finding the surety on the bond liable for the wrongful acts committed by Pugh's attorney.
Initially, we would note that in a non-jury case, the trial judge, or the probate judge in this instance, is the finder of fact and that a presumption of correctness attaches to his findings and to the judgment based on those findings.Clardy v. Capital City Asphalt Co., 477 So.2d 350 (Ala. 1985). The resulting judgment will not be disturbed on appeal unless it is manifestly unjust, palpably wrong, or without supporting evidence. Id. at 352.
On appeal the surety contends that its only obligation on the bond was for any deficiencies in the ward's estate caused by a negligent or wrongful act committed by Pugh, not by her attorney. Pugh's testimony reveals that she did not commit any wrongful acts or, otherwise, act negligently in regard to her position as conservator over the ward's estate. However, we would note that any determination by the probate judge in regard to Pugh's actions was a question of fact.
The evidence reveals that Pugh, after turning her ward's estate funds over to the attorney, *Page 283 
made several inquiries in regard to the status of her ward's estate. Pugh called her attorney on one occasion to inquire as to whether she would be receiving a bank book. On several other occasions Pugh called to inquire about the status of the annual accountings, the income tax returns, and the estate tax returns. Pugh testified that every time she contacted her attorney's office regarding these matters, the secretary assured her that everything was being taken care of. However, Pugh never received a bank pass book. It was also later discovered that the tax returns were never prepared.
The probate court could well have determined that Pugh's actions did not conform to that of a prudent person. For approximately two years, Pugh never demanded to see the actual income tax returns, estate tax returns, bank statements, or bank book because she believed that her attorney was taking care of all these matters. However, the very fact that the attorney was not authorized to sign checks on behalf of the ward's estate should have alerted Pugh that something was wrong.
Here, in deciding this appeal, we turn to a brief summary on the law of agency and suretyship. Our supreme court has stated that an attorney is a special agent for his client during the prosecution or defense of his client's case. Mitchum v.Hudgens, 533 So.2d 194 (Ala. 1988). Furthermore, " '[a]n agent's apparent authority must be founded upon the conduct of the principal and not upon the conduct of the agent.' " Id. at 199 (quoting Daniel v. Scott, 455 So.2d 30, 32-33
(Ala.Civ.App. 1984)).
Our review of the record reveals that there was ample evidence to support the finding that an agency relationship existed between Pugh and her attorney. The evidence also reveals that Pugh expressly gave her attorney the apparent authority to handle the broad financial matters associated with her ward's estate. Once Pugh was appointed as conservator by the probate court, she turned all the papers and bank statements relating to her ward's estate over to her attorney, who in turn agreed to prepare all the income and estate tax returns and annual accountings. Pugh later entrusted her attorney with all the funds in her ward's savings account for the purpose of reinvesting them to obtain a higher rate of interest.
Furthermore, it is well settled law that when an agent commits an "intentional, wanton, or negligent act while in the line and scope of his employment, liability for such act [will] be imputed to the principal, regardless of the actual participation of the principal in the intentional, wanton or negligent act or omission under the doctrine of respondeat superior." Aggregate Limestone Co. v. Robison, 276 Ala. 338,342, 161 So.2d 820, 824 (1964). In Lawrence v. Gayle, 294 Ala. 91,94, 312 So.2d 385, 387 (1975), our supreme court stated that "omissions and commissions of an attorney at law are to be regarded as acts of the client whom he represents."
Having established that an agency relationship existed between Pugh and her attorney, we now turn to the surety's responsibility on the bond under the suretyship contract. Ala. Code 1975, § 26-2A-140(a)(1), provides that "[s]ureties are jointly and severally liable with the conservator and with each other." It is undisputed that Pugh entered into a suretyship contract with the surety for a bond in the amount of $63,000. The bond named Pugh as principal and Firemen's as surety. InBradley v. Bentley, 231 Ala. 28, 30, 163 So. 351, 352 (1935), our supreme court stated the following:
 "In the case of State v. Parker, 72 Ala. 181
[(1882)], it was observed: 'A contract of suretyship is usually defined to be a contract whereby one person engages to be answerable for the debt, default, or miscarriage of another. . . . It was further observed: "The debt is due from the principal, and the surety is merely a guarantor for its payment. . . .' "
 "And in the case of Tennessee-Hermitage National Bank v. Hagan, 218 Ala. 390, [395,] 119 So. 4, 9
[(1928)], it was said: 'The relation of principal and surety is also defined as, when one is liable to pay the debt or discharge the obligation, or [and] is entitled, if enforced against him, to indemnity from him who ought to have made the payment or performed before the surety was so compelled.' " *Page 284 
(Citations omitted.) (Bracketed word "and" added inBradley.)
Suffice it to say, Pugh entered into a contract with the surety so that the latter would be answerable for any debt, default, or miscarriage in regard to the estate over which she was appointed conservator. The surety strongly contends that it cannot be liable on the bond since Pugh, herself, did not act negligently or commit a wrongful act in regard to her ward's estate.
In analyzing the above definition of suretyship, we cannot find that the contract entered into by and between Pugh and the surety was limited to enforcement only in the given event that Pugh committed a negligent act. In fact, we have already noted that the probate judge, after hearing the evidence, could have found Pugh liable for the mismanagement of the assets in her ward's estate.
The definition expressly states that a surety is answerable for the debt, default, or miscarriage of another. Here, Pugh was ultimately responsible for her ward's estate, regardless of the fact that she hired an agent to handle the financial matters. She was appointed to oversee her ward's estate and, therefore, had a fiduciary duty to manage it as effectively and prudently as she could. This is precisely the reason why Pugh was compelled by law to file a bond with a surety for the approximate value of her ward's estate. Pugh filed a bond in the amount of $63,000 for protection in case something unforeseeable happened to her ward's estate, which was indeed the case here. Pugh's attorney/agent, while acting within the scope of his employment, committed a miscarriage for which Pugh, as conservator, was ultimately responsible and for which the surety, in so contracting, should be answerable.
We might also add that a surety is not totally without recourse in so answering for the debt of a principal. Ala. Code 1975, § 8-3-2, provides that when a surety pays or discharges the debt of the principal, he becomes substituted for the creditor and is therefore subrogated to all the creditor's rights and remedies.
In light of the above, we find that there was ample evidence to support the probate court's findings. Consequently, the judgment of the probate court is due to be affirmed.
The foregoing opinion was prepared by Retired Appellate Judge RICHARD L. HOLMES while serving on active duty status as a judge of this court under the provisions of § 12-18-10(e), Code 1975.
AFFIRMED.
All the judges concur.